# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 8, 2008       Decided January 23, 2009

No. 08-5138

MALLADI DRUGS & PHARMACEUTICALS, LTD. AND NOVUS
FINE CHEMICALS, LLC,
APPELLANTS

v.

KAREN P. TANDY, IN HER OFFICIAL CAPACITY AS,
ADMINISTRATOR, DRUG ENFORCEMENT ADMINISTRATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01069-RMC)

*James T. Phalen* argued the cause for appellants. With him
on the briefs was *Augusta M. Ridley*.

*Kelsi Brown Corkran*, Attorney, U.S. Department of Justice,
argued the cause for appellee. With her on the brief were
*Gregory G. Katsas*, Assistant Attorney General, and *Mark B.
Stern*, Attorney. *Ronald J. Wiltsie II*, Attorney, entered an
appearance.

Before: SENTELLE, *Chief Judge*, and GARLAND and
GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* Sentelle.

SENTELLE, *Chief Judge*: Malladi Drugs and Pharmaceuticals, Ltd. and Novus Fine Chemicals, LLC (collectively, "Malladi") sued the federal Drug Enforcement Administration ("DEA") for the return of $1,420,000 worth of ephedrine and pseudoephedrine that the DEA seized and administratively forfeited or, alternatively, for judicial process to reassess whether the drugs should be forfeited. The district court dismissed the complaint for failure to state a claim, and Malladi appeals, arguing that the district court failed to treat Malladi's factual allegations as true. We do not reach this question but instead affirm the dismissal of the complaint on the alternative ground that Malladi failed to exhaust its administrative remedies before the DEA and should not now be given a second opportunity to pursue judicial forfeiture.

I

The forfeited chemicals at the center of this dispute are List I chemicals used in the manufacture of controlled substances, which generally are either illegal drugs or drugs available only by prescription. *See* 21 U.S.C. §§ 802(34) (naming ephedrine and psuedoephedrine as List I chemicals), 812 (controlled substances), 828 (unlawful distribution of controlled substances), 829 (prescriptions). To prevent the diversion of List I chemicals to the illicit manufacture of controlled substances, only persons with a valid DEA registration may import them, *id.* § 822; 21 C.F.R. § 1309.21, and such persons must follow detailed reporting requirements, 21 C.F.R. §§ 1304.01-1304.38. The DEA may seize any List I chemicals imported, possessed, or acquired in violation of these regulations. 21 U.S.C. § 881(a)(9).

The customs laws, as modified by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 981, govern the seizure and forfeiture of List I chemicals insofar as they are not inconsistent with other laws applicable to controlled substances and listed chemicals. *See* 21 U.S.C. § 881(d). Under the customs laws, the DEA may forfeit seized goods valued at more than $500,000 only upon a judicial decree after judicial forfeiture proceedings, 19 U.S.C. § 1610, but may administratively forfeit goods valued at or less than $500,000, *id.* § 1607. An administrative forfeiture has the same force and effect as a final decree and order of forfeiture in a judicial proceeding. *Id.* § 1609(b). The DEA must notify parties with an interest in the seized property of its intent to forfeit the goods administratively. *Id.* § 1607(a); 18 U.S.C. § 983(a)(1).

Once notified, interested parties may choose to allow the forfeiture to proceed administratively or may compel the government to initiate a judicial forfeiture action by filing a claim for the property. 18 U.S.C. § 983(a)(2). Although the DEA makes claim forms available, claims need not be made in any particular form and need only identify, under oath, the property being claimed and the claimant's interest in that property. *Id.* § 983(a)(2)(C), (D). A party seeking to challenge the forfeiture of its property in court must file a claim within the deadline set forth in the notice of forfeiture or, if it did not receive a notice letter, no later than thirty days after the final newspaper publication of the notice of seizure. *Id.* § 983(a)(2)(B) (the deadline in the notice letter "may not be earlier than 35 days after the date the letter is mailed"). If an interested party files a timely claim, the administrative forfeiture is terminated and the DEA must file a complaint for judicial forfeiture in the district court within ninety days or return the seized property. *Id.* § 983(a)(3). In the subsequent civil forfeiture proceedings, the government bears the burden of proving, by a preponderance of the evidence, that the property

is subject to forfeiture.  *Id.* § 983(c)(1).

If no interested party files a claim, then the DEA administratively forfeits the property by default and the only option remaining for an interested party is to file a petition for remission or mitigation of the forfeiture with the DEA.  28 C.F.R. § 9.3.  "Whether the property or a monetary equivalent will be remitted to an owner shall be determined at the discretion of the Ruling Official" within the DEA.  28 C.F.R. § 9.7; *see Tourus Records, Inc. v. DEA*, 259 F.3d 731, 735 (D.C. Cir. 2001).

II

Malladi Drugs and Pharmaceuticals, Ltd. ("Malladi DPL"), a corporation based in India, is a supplier of pharmaceutical raw materials.  At the time of the underlying events, Malladi, Inc., a United States subsidiary of Malladi DPL, imported List I chemicals from Malladi DPL and sold them in the United States to Novus Fine Chemicals, LLC ("Novus"), among other companies.  Novus is now a wholly-owned subsidiary of Malladi DPL, and Malladi, Inc., which is not a party to this litigation, has ceased operations.

On April 6, 2005, DEA agents inspected Malladi, Inc.'s record-keeping procedures for List I chemicals at its corporate headquarters in New Jersey.  The agents "expressed reservations" about the organization of Malladi, Inc.'s file room, its document retention system, and the availability of documentation necessary to reconcile inventory.  The DEA agents returned to Malladi, Inc.'s headquarters two days later and seized 233 drums of ephedrine and pseudoephedrine in inventory, valued at $241,500.  On April 11, the agents again returned to Malladi, Inc.'s corporate headquarters and, according to the allegations of the complaint, demanded surrender of the

company's DEA import registration, which the manager relinquished "under duress and pressure from several DEA officials." After Malladi, Inc. surrendered its import registration, the DEA seized three shipments of ephedrine and pseudoephedrine shipped from Malladi DPL in India to Malladi, Inc. in New Jersey upon their arrival at United States ports: 400 drums of ephedrine hydrochloride, valued at $464,000, on April 14; 240 drums of pseudoephedrine hydrochloride, valued at $250,500, on April 27; and 400 drums of ephedrine hydrochloride, valued at $464,000, on May 2. The aggregate value of all four seizures from Malladi, Inc. was $1,420,000.

The DEA notified Malladi, Inc. of the four seizures and its intention to administratively forfeit the chemicals. The letters of notification also informed Malladi, Inc. of the procedures and deadlines for filing a claim to contest the forfeiture in court and for filing a petition requesting remission or mitigation of the forfeiture from the DEA. Malladi did not file a claim for the property, which would have entitled it to judicial forfeiture proceedings, but instead allowed the DEA to administratively forfeit the goods and then filed a petition for remission of each of the four seizures. The DEA denied all four petitions and administratively forfeited the chemicals.

Malladi then filed suit against the DEA in district court for return of the chemicals or the institution of judicial forfeiture proceedings. In its action, Malladi contended that the DEA was required to pursue judicial, rather than administrative, forfeiture because the four seizures—the aggregated value of which exceeded $500,000—were part of a single plan accomplished when the DEA seized Malladi's inventory and then "constructively seized" the three inbound shipments by demanding Malladi's import registration. *See* 19 U.S.C. § 1610. Malladi also argued that the DEA should have treated its petitions for remission as claims compelling judicial

proceedings and that the administrative forfeitures violated its Fifth Amendment due process rights. The DEA moved to dismiss the complaint, urging that Malladi never filed a claim seeking judicial process, that aggregation of the four seizures was not required, and that Malladi waived the aggregation argument by not raising it before the DEA. The district court granted the motion to dismiss, concluding *sua sponte* that aggregation was inappropriate because the DEA could not have constructively seized the shipments by demanding Malladi's import license under duress, when Malladi itself stated that it "voluntarily surrendered its List I Registration" in its four petitions to the DEA, which it attached to its complaint. The court also held that Malladi's petitions for remission could not be considered claims requiring the DEA to commence judicial forfeiture proceedings and that the due process argument failed because it was predicated on the other two unsuccessful arguments.

Malladi appealed and now argues that the district court failed to accept the facts alleged in the complaint in the light most favorable to Malladi when the court rejected the factual allegation of duress because it believed that allegation contradicted Malladi's explanation in its petitions to the DEA that it voluntarily surrendered its import registration. We affirm the district court's dismissal of the complaint, but on the alternative ground that Malladi failed to exhaust its administrative remedies before the DEA and should not now be given a second opportunity to pursue judicial forfeiture when it failed to seek that remedy within the statutory deadline.

## III

We review *de novo* the district court's granting of the motion to dismiss and we may affirm the judgment of that court on grounds different from those assigned in the decision under

review. *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1230 (D.C. Cir. 1991). Malladi does not appeal the district court's conclusion that its filings with the DEA were petitions for remission and not claims triggering judicial forfeiture proceedings. In its remaining complaint before the district court, Malladi argued that the customs statutes required the DEA to initiate judicial proceedings to forfeit the chemicals because the agency should have aggregated their value given the circumstances of their seizure, and that the administrative forfeiture therefore denied Malladi due process. This legal challenge fails because Malladi did not exhaust its administrative remedies before filing suit, having neglected to use the mechanism for obtaining judicial relief provided in the forfeiture statutes and having failed to raise the aggregation argument in its proceedings before the DEA.

The statutes and regulations governing DEA forfeiture of List I chemicals set forth only two options for a party asserting ownership to contest an administrative forfeiture and reclaim its property: a petition for remission, which asks the agency for discretionary return of the property, and a claim, which initiates the judicial process to decide whether the property should be forfeited. A party claiming ownership of the seized property may choose to pursue either the administrative or the legal remedy, complying with the applicable filing deadline for its choice.[1] As previously discussed, if no one files a claim for the property, the DEA may administratively forfeit it by default,

---

[1] The DEA's notice-of-seizure form states that a party claiming ownership "may petition the DEA for return of the property . . . and/or . . . may contest the seizure and forfeiture of the property in Federal court," implying that an owner may pursue both routes. This may be true, but as a practical matter, filing a claim to contest the forfeiture in court ends the administrative forfeiture from which an owner would petition for remission.

which forfeiture has the same force and effect as a final decree and order of forfeiture in a judicial proceeding. This administrative system efficiently settles disputes over property seized by the DEA, serving the agency's interest in finality and the owner's interest in expeditious return of its property.

Malladi received from the DEA four notices of seizure and intent to administratively forfeit the seized chemicals, and each notice informed Malladi of the procedures and deadlines for filing a claim to contest the forfeiture in court and for filing a petition requesting remission or mitigation of the forfeiture. The notices further alerted Malladi that failure to file a claim contesting the forfeiture and seeking judicial resolution would "result in the termination of [its] interest in the asset, and may preclude . . . contesting the forfeiture of the asset in any judicial proceeding." Malladi chose not to file a claim contesting any of the four administrative forfeitures or to pursue the judicial forfeiture route in any way. Instead, Malladi chose only to pursue the discretionary petition route and allowed the June and July 2005 deadlines for filing a claim to pass. Its chosen remedy having failed, Malladi now for the first time seeks the alternative remedy of judicial forfeiture, outside the statutorily-provided administrative procedures and deadlines.

The forfeiture statutes and regulations provide alternative, not sequential, administrative and legal remedies for an administrative forfeiture. Malladi elected to forego the legal remedy it seeks here when it chose the discretionary administrative remedy and allowed the time for filing a claim under the administrative scheme to pass. Having waived its opportunity for judicial forfeiture proceedings during the administrative process, Malladi may not now attempt to correct its choice of remedy in federal court. *See Cole v. United States (In re $844,520)*, 136 F.3d 581, 582 (8th Cir. 1998) (per curiam) (holding district court "properly rejected [petitioner's] attempt

to collaterally attack the administrative forfeiture" when the petitioner received notice of the forfeiture but did not contest it by filing a claim); *Sarit v. DEA*, 987 F.2d 10, 17 (1st Cir. 1993) ("[M]ost challenges to forfeiture would be foreclosed by a plaintiffs' [*sic*] failure to utilize the mechanism for obtaining judicial relief provided in the forfeiture statute and regulations."); *Averhart v. United States (In re $67,470)*, 901 F.2d 1540, 1545 (11th Cir. 1990) ("It is inappropriate for a court . . . to review the merits of a forfeiture matter when the petitioner elected to forego the procedures for pursuing an adequate remedy at law. . . . [The court] cannot be used to enable a petitioner to rescind his own choice as to which avenue of relief to pursue."); *see also United States v. Price*, 914 F.2d 1507, 1510-11 (D.C. Cir. 1990) (holding that the government may preempt a district court's jurisdiction to resolve a post-conviction claim for return of property by instituting administrative forfeiture proceedings, making a challenge to the forfeiture in the administrative proceeding the defendant's only remedy).  We will not "encourag[e] people to ignore [an agency's] procedures" by allowing litigants who "deliberate[ly] flout[]" administrative processes to seek those forfeited administrative remedies from the court later.  *McKart v. United States*, 395 U.S. 185, 195 (1969).  Because Malladi could have "petition[ed] the agenc[y] directly for the relief [it] seek[s] in this lawsuit" and failed to do so, it has "not exhausted [its] administrative remedies."  *Ass'n of Flight Attendants v. Chao*, 493 F.3d 155, 158 (D.C. Cir. 2007).

Malladi compounded the exhaustion problem by failing to raise its argument about aggregation and judicial forfeiture before the DEA at all, even in the petitions that it did file.  For the first time, Malladi now argues that the DEA should have initiated judicial forfeiture proceedings without the stimulus of a claim, based on the aggregated value of the seized property. But Malladi did not make this argument in any of its four letters

to the DEA. Malladi did not in any way ever suggest to the agency that it sought judicial forfeiture proceedings, that the DEA should have initiated such proceedings, or that the value of the seizures should be aggregated and considered as one seizure over $500,000. Nor is the question of aggregation an obvious or settled one. As counsel for Malladi admitted at oral argument, he could find "no law" about aggregation, either statutory or case law. The only authority of which the parties have made the court aware is the DEA's own internal guidance describing the possibility of aggregation in general terms.

Aggregation of drug seizures, thus, is just the sort of open and fact-specific question that agency expertise is best suited to consider in the first instance, highlighting exhaustion's "twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Ass'n of Flight Attendants*, 493 F.3d at 158 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). We consistently refuse to consider arguments litigants raise for the first time in court rather than before the agency, including DEA forfeiture proceedings. *See id.* at 158-59; *United Transp. Union v. Surface Transp. Bd.*, 114 F.3d 1242, 1244-45 (D.C. Cir. 1997); *Colon-Calderon v. DEA*, 218 F. App'x 1, 1 (D.C. Cir. 2007) (refusing to consider notice argument that petitioner did not raise before the DEA in his petition for remission); *see also Linarez v. DEA*, 2 F.3d 208, 213 (7th Cir. 1993) ("[A] forfeiture cannot be challenged in district court under any legal theory if the claims *could have* been raised in an administrative proceeding, but *were not*."). Consistent with the concerns underlying exhaustion and waiver of claims, Malladi's failure "to pursue normal administrative remedies" here allowed it to "side-step[] a corrective process which might have cured or rendered moot the very defect later complained of in court." *McGee v. United States*, 402 U.S. 479, 483 (1971). We will not countenance a complaint that is the culmination of "a thoroughgoing attempt to sidestep the administrative process

and make the first serious case for [judicial forfeiture] later in court." *Id.* at 487.

Malladi urges that because this action is a collateral attack on the administrative forfeiture rather than a direct appeal from an agency decision, it may raise new arguments that it did not assert before the agency. The critical distinction, however, is not the posture of the complaint but rather whether the plaintiff had the opportunity to call the alleged error to the agency's attention in the prior proceedings. If, for example, inadequate notice or illegal procedures prevented the plaintiff from being able to raise its objection before the agency, courts may allow the plaintiff to raise the objection for the first time in a collateral attack on the agency action. *See Sarit*, 987 F.2d at 17 ("[C]ourts have entertained challenges to the adequacy of notice, reasoning that the mechanism [for obtaining judicial relief] is not available to a plaintiff who is not properly notified of the pending forfeiture."); *Averhart*, 901 F.2d at 1545 ("[J]urisdiction might be appropriate when a petitioner's failure to properly seek legal relief [from administrative forfeiture] resulted from errors of procedure and form or the government's own misconduct."). But Malladi does not dispute that it received adequate notice of the administrative forfeitures, that it chose to contest those forfeitures only by filing petitions for discretionary remission, and that it never raised any judicial forfeiture arguments before the DEA. Malladi had adequate opportunity to make the DEA aware of its aggregation objection but failed to do so, therefore it cannot now challenge the DEA's action on that ground.

\* \* \*

For the foregoing reasons, we affirm the district court's dismissal of the complaint on the alternative ground that Malladi has failed to exhaust its administrative remedies.