# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 18, 2014          Decided July 25, 2014

No. 12-5339

WILLIAM HAVENS,
APPELLANT

v.

RAYMOND EDWIN MABUS, JR., SECRETARY OF THE NAVY;
CHAIRMAN, BOARD FOR CORRECTION OF NAVAL RECORDS,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01859)

*John B. Wells* argued the cause for the appellant.

*Michelle J. Seo*, Special Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen*, *Jr.*, United States Attorney, and *R. Craig Lawrence* and *Wynne P. Kelly*, Assistant United States Attorneys, were on brief.

Before: HENDERSON and WILKINS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: Appellant William Havens (Havens) is a retired officer of the United States Navy Reserve (Navy Reserve or Reserve) who seeks a correction of his military record to reflect that he was retired by reason of physical disability. Havens served on active duty in the Navy Reserve for over twenty-six years; he was discharged and transferred to the Selected Reserve in 1996 after twice failing to receive a promotion. *See* 10 U.S.C. § 14506. In 2002, Havens was then discharged from the Selected Reserve and transferred to the Retired Reserve, having been found "Not Physically Qualified" to continue service. Over the years, Havens has challenged the discharges in various arenas, arguing, *inter alia*, that he should have been given a physical disability retirement due to his psoriasis and psoriatic arthritis. Havens first sought recourse from the Board for Correction of Naval Records (BCNR), which denied two separate record correction applications and four reconsideration requests filed by Havens. He then filed suit in the United States Court of Federal Claims (Court of Federal Claims, CFC), which suit that court dismissed as time-barred. Finally, Havens filed the instant suit in federal district court, challenging his 1996 discharge from active duty and his 2002 retirement from the Selected Reserve as well as the BCNR decisions denying him a record correction. The district court dismissed the action, concluding that it was barred by the earlier CFC dismissal under the doctrine of *res judicata*. For the following reasons, we affirm in part and reverse in part.

## I. BACKGROUND

### A. Disability Evaluations and the BCNR

Pursuant to 10 U.S.C. § 1216, the Secretary of the Navy (Secretary) is responsible for "separating or retiring" those members of the Navy who are unable "to continue [N]aval service because of physical disability." Instruction 1850.4D

at 10-1, Secretary of the Navy (1998).[1] The Secretary evaluates the disabilities of Navy members through the Navy's Disability Evaluation System (DES). The first phase of the DES process is typically conducted by a Medical Evaluation Board (MEB), which is convened if a physician determines that a Navy member "is unable to perform full military duty or unlikely to be able to do so within a reasonable period of time." *Id.* at 10-2.

If the MEB determines that further evaluation is required, it refers the case to the Physical Evaluation Board (PEB). At the PEB stage, the service member is first evaluated by an informal PEB. If he is an active-duty service member, the informal PEB determines whether he is "Fit" or "Unfit" to continue service.[2] *Id.* at 4-8, 10-2 to 10-3. If the member is an inactive-duty Navy Reservist, as Havens was post-1996, however, the informal PEB typically makes a different determination; to wit, it decides whether he is "Physically

---

[1] Instruction 1850.4D is the instruction issued by the Secretary governing disability evaluations that was in effect until 2002. Accordingly, the description of disability evaluations for Navy members based on Instruction 1850.4D describes the process as it previously existed. Instruction 1850.4D was cancelled by Instruction 1850.4E. *See* Instruction 1850.4E at 2, Secretary of the Navy (2002). Instruction 1850.4E established a similar process, making a number of changes not relevant here. *See id.* at 1-1 to 1-4.

[2] "Fit" means that "the member is Fit to continue naval service based on evidence which establishes that the member is able to reasonably perform the duties of his or her office, grade, rank or rating." Instruction 1850.4D at 1-2. "Unfit" is a "finding that the member is Unfit to continue naval service based on evidence which establishes that the member cannot reasonably perform the duties of his or her office, grade rank or rating." *Id.*

Qualified" or "Not Physically Qualified" [3] to continue serving. [4] *Id.* at 4-8. The findings of the informal PEB may be challenged at a formal PEB hearing, during which the member may "present evidence, testimony, and documents in support of his or her case." *Id.* at 10-3. Using the same rubric as the informal PEB, the formal PEB makes recommended findings, which findings become final with the PEB President's approval.

Although there appears to be little difference between the description of an Unfit service member and a Not Physically Qualified service member, *see supra* note 3, the consequences of receiving one determination as opposed to the other are significant. An Unfit member, whether active or inactive, is assigned a disability rating between zero and one hundred per

_____

[3] Not Physically Qualified is a "disposition applied to a reservist when he or she is unable to continue service in the Naval or Marine Corps Reserves because of a non-duty related disease or injury which precludes the member from performing the duties of his or her office, grade, rank, or rating in such a manner as to reasonably fulfill the purpose of his or her reserve employment." *See* Instruction 1850.4D at 2-16. Under Instruction 1850.4D, a Not Physically Qualified disposition appears to be the same as an Unfit disposition, *compare id.* at 1-2, *with id.* at 2-16, the key difference being that the Not Physically Qualified service member's disabling condition is non duty-related.

[4] There are limited circumstances, however, where an inactive-duty Navy Reservist can receive a Fit/Unfit determination. For example, "[a] reservist on extended active duty for 30 days or more who has been released from active duty and now is in an inactive duty drilling status and requests referral to the PEB for a condition which the member alleges was incurred or aggravated while on active duty shall be processed into the DES and the PEB shall determine and record whether the member is Fit or Unfit." Instruction 1850.4D at 1-4.

cent by the PEB and, based on the rating and the member's length of service, he is entitled to either disability retirement status and retired pay or a one-time disability severance payment.[5] A member with a Not Physically Qualified designation, however, does not receive any benefits and is simply discharged.

If a service member is dissatisfied with the discharge designation reflected in his military record, he may file an application for a record correction with the BCNR.[6] Subject to exceptions inapplicable here, the BCNR issues the Navy's final decision on a record correction application, *see* 32 C.F.R. § 723.6(e), and reconsiders its decision only if the applicant presents "new and material evidence or other matter not previously considered by the Board," *id.* § 723.9.

---

[5] If a member has "at least 20 years of service computed under [10 U.S.C. § 1208]" *or* has at least a 30% disability rating (and satisfies other conditions set out by statute), he is entitled to disability retirement status and retired pay. 10 U.S.C. § 1201 (requirements for disability retirement for "[r]egulars and members on active duty for more than 30 days"); *id.* § 1204 (requirements for disability retirement for "[m]embers on active duty for 30 days or less or on inactive-duty training"). A member who has served fewer than twenty years or who has less than a 30% disability rating is entitled to a one-time disability severance payment only. *See* Instruction 1850.4D at 10-2.

[6] The Congress authorizes the Secretary to "correct any military record . . . when [he] considers it necessary to correct an error or remove an injustice," 10 U.S.C. § 1552(a)(1); the Secretary has delegated this function to the BCNR, *see* 32 C.F.R. §§ 723.2(b), 723.6(e).

**B. Facts**

Havens began active-duty service with the Navy Reserve on March 22, 1980. According to his amended complaint, Havens began experiencing medical difficulties while on active duty in 1995, including "skin problems" on various parts of his body, "fatigue" and "pain in his feet." Am. Compl. ¶¶ 7-9, 11, *Havens v. Mabus*, No. 1:10-cv-01859 (D.D.C. Jan. 5, 2012). In September 1995, Havens was diagnosed with psoriasis and psoriatic arthritis and was referred to Travis Air Force Base Hospital in Solano County, California, for additional testing. While there, Havens claims that he requested a MEB to determine his eligibility for disability benefits but neither the Air Force nor the Navy acted on his request.

In August 1996, Havens was discharged from active duty pursuant to 10 U.S.C. § 14506 because he had not been selected for promotion for two consecutive years. Around the time of his discharge, Havens reported to Treasure Island Clinic in San Francisco, California, for a "required discharge physical." Am. Compl. ¶ 25. Havens's complaint suggests that he was again denied a MEB while at the Clinic. *See id.* ¶ 26 ("Commanding Officer did not want to do a Medical Board because it could delay [Havens's] discharge" and because of "understaff[ing]"). The Clinic found Havens "fit for discharge" and he was transferred to the Selected Reserve in September 1996. *Id.* ¶ 27. Havens continued to be rated Physically Qualified for service in that Reserve component following annual physicals in 1997, 1998, 1999 and 2000.[7]

---

[7] Notwithstanding the Navy's determination that Havens was Physically Qualified for service in the Selected Reserve from 1997 to 2000, the Department of Veterans Affairs (VA) evaluated Havens in September 1997 and assigned him a 40% service-connected disability rating based on psoriasis (10%), psoriatic arthritis (20%)

In November 1999, Havens first applied for a record correction with the BCNR, requesting a reversal of his 1996 discharge from active duty for twice failing to be promoted. Although the application was somewhat unclear, it appeared to claim that the Navy should not have discharged him from active duty without first convening a MEB. The BCNR denied his application in June 2000. Havens subsequently requested reconsideration twice in 2001 and once in 2002 but, finding no "new and material evidence," the BCNR denied all three requests.

Meanwhile, the informal PEB evaluated Havens in 2001, recommending in July of that year that Havens be deemed "Not Physically Qualified to Continue Reserve Status."[8]   JA 87. Havens requested review by a formal PEB, which body concluded on January 2, 2002, that Havens was Not Physically Qualified for continued service in the Selected Reserve. Havens was then discharged from the Selected Reserve and transferred to the Retired Reserve in March 2002.  As was true of his 1996 active-duty discharge, his 2002 discharge did not entitle Havens to disability benefits.

---

and undiagnosed illness (10%).  The explanation for this apparent inconsistency between the Navy's Physically Qualified finding and the VA's 40% disabled finding is that the two entities use different standards to evaluate disabilities.  According to the BCNR, "the VA assigns disability ratings to conditions it classifies as 'service connected', i.e., incurred in, aggravated by, or traceable to a period of military service.  Unlike the VA, the military departments do not award ratings based on the mere presence of conditions listed in the VA Schedule for Rating Disabilities."  Joint Appendix (JA) 88, *Havens v. Mabus*, No. 12-5339 (D.C. Cir. Oct. 21, 2013).

[8] The record is unclear as to how the process began and whether a MEB was first convened.

Havens again applied to the BCNR in February 2005, this time challenging only his 2002 discharge from the Selected Reserve. His application took issue with the PEB's failure to assign him a Fit/Unfit determination (rather than the Not Physically Qualified designation) and claimed that, although he was an inactive-duty Reservist, he should have been "retired by reason of physical disability on 1 Mar 2002," because his "physical disability was incurred while on active duty over 30 days [and] did not become aggravated or more severe while in a non-duty status." JA 63, 65; *see supra* note 4. The BCNR treated the 2005 application as a new application but nonetheless denied it on August 3, 2006.[9] Havens then requested reconsideration of the 2006 decision, which request the BCNR denied in April 2007.

## C. Court of Federal Claims Suit

In November 2007, Havens brought a Tucker Act action against the United States in the Court of Federal Claims and

---

[9] In setting out the facts, the district court stated that the BCNR treated Havens's February 2005 application as a request for reconsideration. We disagree. Unlike the earlier reconsideration denials, the BCNR's 2006 decision does not mention "reconsideration" or the "new and material evidence" standard. *See* JA 70, 74, 83. Moreover, the 2006 decision manifests that the BCNR reached the merits of Havens's application, unlike the earlier reconsideration denials. *See* JA 70, 74, 83. Finally, the BCNR had confirmed previously by letter to Havens that, "[i]f [Havens] were to submit a request for correction of [his] record to show that [he] were retired by reason of physical disability on 1 March 2002, . . . it would be treated as a new application, rather than a request for reconsideration of a previous application." Admin. Rec. 107, *Havens v. Mabus*, No. 1:10-cv-01859 (D.D.C. Jan. 19, 2011).

filed an amended complaint in early 2008.[10] His amended complaint alleged, *inter alia*, that he "was improperly released from active duty in 1996 despite being medically unfit for release," Ct. of Fed. Cl. Am. Compl. ¶ 85, *Havens v. United States*, No. 07-780 C (Fed. Cl. Mar. 13, 2008), and that the United States, acting through the Navy and the BCNR, improperly deprived him of "monetary benefits including pay, allowances and disability retired pay" by (1) "failing to convene a medical board in 1996," (2) finding him Not Physically Qualified instead of Unfit in 2002 and (3) denying his multiple requests for a record correction, *id.* ¶¶ 86-90. Havens asked the court to "restore [him] to active duty with all pay and benefit[s] retroactive to September 1, 1996" and to order the Navy to evaluate him through the DES. *Id.* ¶ 93. In the alternative, Havens requested that the court itself modify the 2002 PEB decision—thereby entitling him to benefits or separation pay—or remand to the BCNR for it to determine whether he should receive benefits or separation pay. *See id.*

The United States moved to dismiss the suit pursuant to Rule 12(b)(1), arguing that Havens's complaint was untimely under the Tucker Act's jurisdictional, six-year statute of limitations. *See* 28 U.S.C. § 2501; *Martinez v. United States*, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (*en banc*) (Tucker Act statute of limitations "is jurisdictional in nature"). The Court of Federal Claims agreed with the United States and dismissed Havens's claims as time-barred. The Federal Circuit affirmed without opinion. *See Havens v. United States*, 330 F. App'x 920 (Fed. Cir. 2009), *cert. denied*, 559 U.S. 992 (2010).

---

[10] The Tucker Act gives the Court of Federal Claims exclusive jurisdiction over non-tort suits against the United States seeking more than $10,000 in damages. *See* 28 U.S.C. § 1491(a)(1); *id.* § 1346(a)(2).

## D. District Court Suit

On November 1, 2010, Havens filed this suit against the Secretary in the district court for the District of Columbia. Havens's amended complaint alleged, *inter alia*, that he "was improperly released from active duty in 1996 despite being medically unfit for release," Am. Compl. ¶ 95, that the PEB incorrectly evaluated him under the Physically Qualified/Not Physically Qualified standard (instead of the Fit/Unfit standard), *see id.* ¶ 81, and that the BCNR violated the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*, and the Due Process Clause of the Fifth Amendment to the Constitution by denying Havens's record correction applications, *see* Am. Compl. ¶¶ 98-103. Notably, the amended complaint disclaimed Havens's right to "pre-judgment retroactive monetary payments" and acknowledged that "prospective monetary benefits must be obtained through the [relevant] administrative avenues." *Id.* ¶¶ 106-07. As relief, Havens requested the court to direct the Secretary and the BCNR "to correct his records to reflect that he should have been medically retired to a date as determined by this court." *Id.* ¶ 108.

The Secretary moved to dismiss the complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim. In the alternative, the Secretary sought summary judgment; Havens cross-moved for summary judgment in part. The Secretary argued that the district court lacked subject-matter jurisdiction because Havens's suit was an action for money damages that could be brought only in the Court of Federal Claims under the Tucker Act. The Secretary also argued that the court lacked jurisdiction because Havens's complaint was filed outside the APA's six-year statute of limitations, which, like the Tucker Act's statute of limitations, is jurisdictional in nature. *See* 28

U.S.C. § 2401(a) (six-year statute of limitations); *Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 218 (D.C. Cir. 2013) ("The court lacks subject matter jurisdiction to hear a claim barred by section 2401(a)."). Finally, the Secretary asserted that Havens's complaint failed to state a claim because it was barred by the Court of Federal Claims dismissal under *res judicata*. The court concluded that the Tucker Act did not deprive it of jurisdiction but agreed with the Secretary that the suit was barred by *res judicata* and therefore dismissed the complaint. It did not rule on the statute of limitations question. Havens now appeals.[11]

---

[11] Although the Secretary does not press on appeal his Tucker Act and APA statute of limitations arguments, we address them as they both implicate the district court's jurisdiction. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it." (quotation marks and citation omitted)); *accord Riley v. Titus*, 190 F.2d 653, 655 (D.C. Cir. 1951) ("[T]his court may raise, sua sponte, defects of the District Court's jurisdiction which are apparent on the face of the record."). We conclude that the district court's dismissal cannot be affirmed *in toto* using either of these alternative grounds. *See, e.g.*, *Malladi Drugs & Pharm., Ltd. v. Tandy*, 552 F.3d 885, 892 (D.C. Cir. 2009) (affirming dismissal on alternative ground). First, like the district court, we believe Havens's suit is not a Tucker Act damages action that can be brought only in the Court of Federal Claims because Havens does not seek monetary relief, *see* Am. Compl. ¶¶ 106-08, and the injunctive relief he seeks—disability retirement status—has considerable value that is independent of any future financial benefits flowing from a disability designation, *see Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006) (suit is not damages action properly belonging in CFC if party seeks only injunctive relief with

12

## II. RES JUDICATA

We review *de novo* the district court's application of *res judicata*. *See Ibrahim v. District of Columbia*, 463 F.3d 3, 7

---

considerable independent value); *Smalls v. United States*, 471 F.3d 186, 190 (D.C. Cir. 2006) (record correction to reflect disability retirement status has considerable independent value because it entitles plaintiff to "host" of non-monetary benefits).

Second, we do not think the APA's six-year statute of limitations bars consideration of all of Havens's claims. We read Havens's amended complaint to challenge his 1996 discharge from active duty, *see* Am. Compl. ¶ 95, his 2002 discharge from the Selected Reserve, *see id.* ¶ 81, and all six BCNR decisions from 2000 through 2007 denying Havens's record correction and reconsideration requests, *see id.* ¶¶ 98-100, 103. Although we affirm the dismissal of Havens's claims challenging the 1996 and 2002 discharges and the BCNR decisions issued between 2000 and 2002—as the limitations periods for his claims challenging the discharges and those BCNR decisions had plainly expired by the time Havens filed suit in 2010—his challenges to the 2006 and 2007 BCNR decisions denying him a record correction in relation to the 2002 discharge from the Selected Reserve *are* timely. Havens's APA claims challenging those decisions accrued when the decisions issued in 2006 and 2007, well within six years of the 2010 complaint. *See, e.g.*, *Blassingame v. Sec'y of Navy*, 811 F.2d 65, 71 (2d Cir. 1987) (claim challenging correction board decision accrues on date of decision); *Dougherty v. BCNR*, 784 F.2d 499, 501-02 (3d Cir. 1986) (same); *Smith v. Marsh*, 787 F.2d 510, 512 (10th Cir. 1986) (same); *Geyen v. Marsh*, 775 F.2d 1303, 1309 (5th Cir. 1985) (same). *Compare Martinez*, 333 F.3d at 1303-04 (Tucker Act suit challenging service member's discharge accrues on date discharge is finalized, notwithstanding subsequent correction board decision) *with Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005) ("[C]laims of entitlement to disability retirement pay generally do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it.").

(D.C. Cir. 2006) ("We . . . turn to the District Court's application of *res judicata*, which we review *de novo*."). The district court concluded, and the Secretary argues on appeal, that Havens's amended complaint is barred by *res judicata* because it raises the same claims that were previously dismissed by the CFC as time-barred under the Tucker Act's jurisdictional statute of limitations. *See Havens v. Mabus*, 892 F. Supp. 2d 303, 310-14 (D.D.C. 2012). "Under the doctrine of res judicata, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (quotation marks omitted). We conclude that *res judicata* does not bar Havens's suit because the CFC dismissal does not constitute a final, valid judgment on the merits.[12]

We have previously held that "dismissals for lack of jurisdiction are not decisions on the merits and therefore have no *res judicata* effect on subsequent attempts to bring suit in a court of competent jurisdiction." *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999); *see also Prakash v. Am. Univ.*, 727 F.2d 1174, 1182 (D.C. Cir. 1984) ("A dismissal for lack of subject-matter jurisdiction . . . is not a disposition on the merits and consequently does not have res judicata effect." (footnotes omitted)); 5B CHARLES ALAN WRIGHT ET AL., FEDERAL

---

[12] Assuming *arguendo* that the district court correctly described the CFC's APA jurisdiction, that is, that "[Havens] could have received the benefit of a correction of his record" from that court, *Havens*, 892 F. Supp. 2d at 314, the district court nonetheless erred in treating the CFC's dismissal of Havens's claims as a merits dismissal.

PRACTICE AND PROCEDURE § 1350, at 207-08, 210 (3d ed. 2004) ("Inasmuch as a Rule 12(b)(1) motion basically is one in abatement, a dismissal is not a decision on the merits and has no res judicata effect that would prevent the reinstitution of the action in a court that has subject matter jurisdiction over the controversy." (footnotes omitted)).

This precedent is in line with Federal Rule of Civil Procedure 41(b) and the Supreme Court's interpretation of Rule 41(b) in *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001). Rule 41(b) provides that an involuntary dismissal—"*except one for lack of jurisdiction*, improper venue, or failure to join a party under Rule 19— operates as an adjudication on the merits." FED. R. CIV. P. 41(b) (emphasis added). In *Semtek*, the Supreme Court concluded that an "adjudication upon the merits" under Rule 41(b) is synonymous with a dismissal with prejudice and "the opposite of a 'dismissal without prejudice.' " 531 U.S. at 505 (quotation marks omitted); *see also Jones v. Horne*, 634 F.3d 588, 603 (D.C. Cir. 2011) ("The Supreme Court has interpreted ['adjudication on the merits'] as synonymous with dismissal 'with prejudice.' "). A jurisdictional dismissal—which is *not* an adjudication on the merits under Rule 41(b)—is, then, a dismissal without prejudice. As the Court explained in *Semtek*, a dismissal without prejudice "will . . . ordinarily (though not always) have the consequence of not barring the claim from *other* courts." 531 U.S. at 505 (emphasis in original).

It is plain that the CFC dismissal of Havens's Tucker Act suit based on that Act's statute of limitations is not *res judicata*. First, it is undisputed that the CFC's dismissal is a *jurisdictional* dismissal. As the Federal Circuit recognized in *Martinez*, the Tucker Act's statute of limitations—codified at 28 U.S.C. § 2501—is a "condition[] on the [United States']

waiver of sovereign immunity" and is therefore "jurisdictional in nature." 333 F.3d at 1316. Second, and consistent with the Rule 41(b) framework described in *Semtek*, the CFC and the Federal Circuit have made clear that a Tucker Act section 2501 dismissal "must be" without prejudice. *Remmie v. United States*, 98 Fed. Cl. 383, 389 (2011) ("Because the statute of limitations period [under § 2501] is jurisdictional in this Court, a dismissal on this basis must be without prejudice.") (citing *Scott Aviation v. United States*, 953 F.2d 1377, 1378 (Fed. Cir. 1992) ("Without jurisdiction, the Claims Court cannot presume to dismiss the complaint with prejudice.")). In light of *Semtek* and our own precedent, and recognizing the Federal Circuit's interpretation of the Tucker Act—a statute that circuit is uniquely charged with applying—we conclude that the CFC's Rule 12(b)(1) dismissal is not a "final, valid judgment on the merits" that bars this suit. *See, e.g.*, *EFCO Corp. v. U.W. Marx, Inc.*, 124 F.3d 394, 398 (2d Cir. 1997) (court must examine "what was intended by the first decision and what the logical consequences of that decision are" in order "to determine the res judicata effect of a prior claim"). Our conclusion follows the rule that the "expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right, so that dismissal on that ground does not have claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods." *Semtek*, 531 U.S. at 505; *see also* 18A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4441, at 224 (2d ed. 2002).

Neither *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995), nor *Smalls*, 471 F.3d at 192—two decisions relied upon by the Secretary and the district court—requires a different result. In *Plaut*, the Supreme Court declared that "[t]he rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a

dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits." 514 U.S. at 228 (citing FED. R. CIV. P. 41(b)). By analogizing the statute-of-limitations dismissal to a dismissal for failure to state a claim, the Court made clear that it was not addressing a 12(b)(1) dismissal based on a *jurisdictional* statute of limitations.

The district court's and the Secretary's reliance on *Smalls* is similarly unavailing. There, we concluded that an earlier district court dismissal (in the District of Hawaii) of a lawsuit alleging Little Tucker Act and APA claims for lack of jurisdiction was *res judicata* as to a second suit also brought in the district court under the APA. *See* 471 F.3d at 192. In other words, *Smalls* involved a second lawsuit brought in district court (albeit a different district) and governed by the same statute of limitations. Relying on *Kasap*, *Prakash* and *Semtek*, we do not think *Smalls* binds us in determining the effect of a dismissal by a court of limited jurisdiction based on a jurisdictional statute of limitations—section 2501—on a second suit brought in a *different* court and, most important here, applying a *different* statute of limitations. In *Smalls*, we were not faced with a "subsequent attempt[] to bring suit in a court of competent jurisdiction," *Kasap*, 166 F.3d at 1248, because the second *Smalls* suit brought the same claim, in the same court system with the same subject-matter jurisdiction, as the first; therefore, like the first *Smalls* court, the second *Smalls* court was not "a court of competent jurisdiction," *id.*; *see, e.g.*, *Martel v. Stafford*, 992 F.2d 1244, 1245-46 (1st Cir. 1993) ("[T]he general rule is that a dismissal on limitations grounds does not bar the claim generally, but only bars a second action in the same jurisdiction or in a jurisdiction that would apply the same statute of limitations."); *see also Reinke v. Boden*, 45 F.3d 166, 171 (7th Cir. 1995) (while "intrasystem use of res judicata" for statute of limitations dismissals "promotes

judicial economy within that system . . .[,] the intent of the first forum to save the judicial resources of the second cannot be so readily presumed" in "intersystem use of res judicata").

For the foregoing reasons, the district court's dismissal of Havens's claims challenging his 1996 discharge from active duty, his 2002 discharge from the Selected Reserve and the BCNR decisions issued between 2000 and 2002 is affirmed as those claims are barred by the APA statute of limitations. *See Malladi Drugs & Pharm., Ltd. v. Tandy*, 552 F.3d 885, 892 (D.C. Cir. 2009). Its dismissal of Havens's challenges to the 2006 and 2007 BCNR decisions is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*