Opinion by Judge W. FLETCHER; Dissent by Judge STEIN.
OPINION
W. FLETCHER, Circuit Judge:
Plaintiffs Beverly Ann Hollis-Arrington and Crystal Monique Lightfoot appeal the district court’s judgment dismissing their claims against the Federal National Mortgage Association (“Fannie Mae”). They argue that the district court lacked subject matter jurisdiction over their claims. We disagree. Under the rule announced in American National Red Cross v. S.G., 505 U.S. 247, 112 S.Ct. 2465, 120 L.Ed.2d 201 (1992), Fannie Mae’s federal charter confers federal question jurisdiction over claims brought by or against Fannie Mae. We affirm the district court.
I. Background
This case is one of several brought by the plaintiffs following foreclosure proceedings initiated by Fannie Mae against Hollis-Arrington’s home in West Hills, California. Hollis-Arrington first filed two suits in the United States District Court for the Central District of California, alleging numerous state- and federal-law claims against Fannie Mae and other defendants. The district court dismissed both suits, and we affirmed on appeal. Hollis-Arrington v. Cendant Mortg. Corp., 61 Fed.Appx. 462 (9th Cir.2003); Hollis-Arrington v. Cendant Mortg. Corp., 61 Fed.Appx. 463 (9th Cir.2003).
Plaintiffs then filed the present suit in California state court, alleging state-law claims similar or identical to those in the two earlier federal suits. Fannie Mae removed to federal court, arguing that the sue-and-be-sued clause in its federal corporate charter conferred federal question subject matter jurisdiction. Plaintiffs filed a motion to remand, which the district court denied. The district court dismissed all of plaintiffs’ claims as barred by res judicata and collateral estoppel. We initially affirmed in an unpublished disposition. Lightfoot v. Cendant Mortg. Corp., 465 Fed.Appx. 668 (9th Cir.2012). We la *683 ter withdrew that disposition, appointed pro bono counsel, and ordered the parties to brief whether Fannie Mae’s federal charter granted the district court subject matter jurisdiction. Lightfoot v. Cendant Mortg. Corp., No. 10-56068 (Apr. 13, 2012) (order withdrawing disposition).
II. Discussion
A. Fannie Mae’s Charter
The sue-and-be-sued clause in Fannie Mae’s charter authorizes Fannie Mae “to sue and be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal.” 12 U.S.C. § 1723a(a). We hold that this language confers federal question jurisdiction over claims brought by or against Fannie Mae. In so holding, we do not write on a clean slate. In Red Cross, the Supreme Court gave us a clear rule for construing sue- and-be-sued clauses for federally chartered corporations. The Court held that “a congressional charter’s ‘sue and be sued’ provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts.” 505 U.S. at 255, 112 S.Ct. 2465.
The question in Red Cross was whether the American National Red Cross’s federal charter conferred federal question jurisdiction over suits brought by or against the Red Cross. The sue-and-be-sued clause in the Red Cross’s charter authorized the Red Cross “to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States.” Id. at 248, 112 S.Ct. 2465. The Court held that the clause conferred federal question jurisdiction. Id. at 257, 112 S.Ct. 2465. Justice Scalia dissented for himself and three others. He and his fellow dissenters would have held that the clause conferred only corporate capacity to sue and be sued, and that subject matter jurisdiction had to be conferred by some other provision of federal law. Id. at 265, 112 S.Ct. 2465 (Scalia, J., dissenting).
The Court based its holding on a line of cases, stretching back to Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), that made clear that a sue-and-be-sued clause for a federally chartered corporation confers federal question jurisdiction if it specifically mentions federal courts. Red Cross, 505 U.S. at 252-56, 112 S.Ct. 2465. The Court in Osborn held, in an opinion by Chief Justice Marshall, that a clause authorizing the second Bank of the United States “to sue and be sued ... in all state courts having competent jurisdiction and in any circuit court of the United States” conferred federal question jurisdiction. 22 U.S. (9 Wheat.) at 817-18. Chief Justice Marshall distinguished Osborn from Bank of the United States v. Deveaux, 9 U.S. (5 Cranch) 61, 3 L.Ed. 38 (1809), in which the Court had held that the charter of the first Bank of the United States did not confer federal subject matter jurisdiction because that bank’s charter authorized the bank to “sue and be sued ... in Courts of record,” without specifying the federal courts. Osborn, 22 U.S. (9 Wheat.) at 817-18; Deveaux, 9 U.S. (5 Cranch) at 85. Chief Justice Marshall wrote that, in contrast to the first bank’s charter, the second bank’s charter could not have been “more direct and appropriate” in conferring federal question jurisdiction. Osborn, 22 U.S. (9 Wheat.) at 817.
Almost a century later, the Court held in Bankers’ Trust Co. v. Texas & Pacific Railway, 241 U.S. 295, 36 S.Ct. 569, 60 L.Ed. 1010 (1916), that a federal corporate charter did not confer federal question jurisdiction when it authorized a railroad “to sue and be sued ... in all courts of law and equity within the United States.” Id. at 304-05, 36 S.Ct. 569. That language had “the same generality and natural im *684 port” as the language in Deveaux because it did not specifically mention the federal courts. Id. at 304, 36 S.Ct. 569; see Red Cross, 505 U.S. at 254, 112 S.Ct. 2465. Then, in D’Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Court upheld federal question jurisdiction based on a federal charter authorizing the Federal Deposit Insurance Corporation to sue or be sued “in any court of law or equity, State or Federal.” Id. at 455, 62 S.Ct. 676.
The Court wrote in Red Cross that these cases established a “rule” that would have been known to Congress at least as far back as 1942, when D’Oench was decided. Red Cross, 505 U.S. at 255-57, 259-60, 112 S.Ct. 2465. When federal charters, like those of the Red Cross and of Fannie Mae, “expressly authoriz[e] the organization to sue and be sued in federal courts ... the provision extends beyond a mere grant of general corporate capacity to sue, and suffices to confer federal jurisdiction.” Id. at 257, 112 S.Ct. 2465. As the Court of Appeals for the D.C. Circuit has already held, that rule resolves this case. See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat’l Mortg. Ass’n v. Raines, 534 F.3d 779, 784 (D.C.Cir.2008) (holding, based on Fannie Mae’s charter, that federal- question jurisdiction exists over suits brought by or against Fannie Mae).
Despite the specific reference to federal courts in Fannie Mae’s sue-and-be-sued clause, our dissenting colleague contends that the clause does not confer federal question jurisdiction. Like Justice Scalia and his fellow dissenters in Red Cross, the dissent argues that the clause confers only corporate capacity to sue and be sued, and that subject matter jurisdiction must come from some other provision of federal law. Dissent at 692. The dissent relies on the phrase “court of competent jurisdiction” in the clause. Before 1954, Fannie Mae, like the Red Cross, had the statutory authority to “sue and be sued; complain and defend, in any court of law or equity, State or Federal.” H.R.Rep. No. 83-1429, at 82 (1954) (emphasis added). In 1954, as one of many changes to Fannie Mae’s charter, Congress amended Fannie Mae’s sue-and-be-sued clause to authorize it “to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal.” Housing Act of 1954, Pub.L. No. 83-560, § 201, 68 Stat. 590, 620 (codified as amended at 12 U.S.C. § 1723a(a)) (emphasis added).
The dissent acknowledges that Fannie Mae’s pre-1954 charter conferred federal question jurisdiction, but argues that Congress eliminated that jurisdiction by replacing the phrase “court of law or equity” with “court of competent jurisdiction.” Dissent at 692-93. We disagree. Eliminating the charter’s grant of federal question jurisdiction would have imposed a severe new restraint on Fannie Mae’s ability to litigate in federal court. Under the general federal question jurisdiction statute, 28 U.S.C. § 1331, Fannie Mae would have been restricted by the well-pleaded complaint rule. See, e.g., Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 9-10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Given that Fannie Mae is often sued under state-law causes of action, § 1331 would have conferred jurisdiction in a relatively small number of cases. Diversity jurisdiction under 28 U.S.C. § 1332, if it existed at all, would have been unavailable in many, perhaps most, cases because Fannie Mae suits typically involve mortgage transactions to which there are multiple parties, often resulting in a lack of complete diversity. See Caterpillar Inc. v. Lewis, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996).
*685 There is no indication that Congress intended to eliminate federal question jurisdiction in 1954 by replacing the phrase “court of law or equity” with the phrase “court of competent jurisdiction.” Neither the House nor the Senate report on Fannie Mae’s 1954 amendments so much as mentions the “court of competent jurisdiction” language. See H.R.Rep. No. 83-1429, at 19-24, 43-50; S.Rep. No. 83-1472, at 33, 74-75 (1954). Given the important practical effect of eliminating federal question jurisdiction under Fannie Mae’s sue- and-be-sued clause, we should expect the House or the Senate to have said something if they intended a change of that sort. Instead, there was silence.
In our view, the most likely explanation for replacing the phrase “court of law or equity” with “court of competent jurisdiction” is that Congress was simply modernizing Fannie Mae’s charter. At our founding and for many years thereafter, the federal court system and most state court systems had separate law and equity courts. By the middle of the 20th century, however, the federal courts and almost every state had abandoned the law/equity division. See Leonard J. Emmerglick, A Century of the New Equity, 23 Tex. L.Rev. 244, 244 n.1 (1945). The Federal Rules of Civil Procedure merged law and equity in the federal courts in 1938. Id. By 1945, only five states continued to have separate law and equity courts. Id. At the time of the 1954 amendment, Fannie Mae’s charter’s reference to “court[s] of law or equity” had become an antiquarian relic with little relevance to the American legal system.
The change in Fannie Mae’s sue-and-be-sued clause is best explained as getting rid of this anachronism, as Congress had recently done in other statutes. In 1948, in response to the Federal Rules of Civil Procedure’s elimination of the law/equity distinction, Congress removed a number of references to “law or equity” in the statutes defining federal district court jurisdiction. See Act of June 25, 1948, Pub.L. No. 80-773, §§ 1332, 1343, 1345-46, 62 Stat. 869, 930-33; H.R.Rep. No. 80-3214, at A115, A121, A123 (1948). In 1954, as we discuss in more detail below, Congress exchanged “court of law or equity” for “court of competent jurisdiction” not just in Fannie Mae’s charter, but also in the charters of the Federal Savings and Loan Insurance Corporation (“FSLIC”) and the Home Loan Bank Board.
If Congress wanted to eliminate the grant of federal question jurisdiction from Fannie Mae’s charter, it is highly unlikely that it would have done so in the way the dissent suggests. In 1954, Congress had no reason to think that replacing the phrase “court of law or equity” with the phrase “court of competent jurisdiction” would eliminate federal question jurisdiction under Fannie Mae’s sue-and-be-sued clause. Supreme Court cases from Deveaux to D’Oench had put Congress on notice that a specific reference to the federal courts was “necessary and sufficient to confer jurisdiction.” Red Cross, 505 U.S. at 252, 112 S.Ct. 2465 (emphasis added). The 1954 amendments, while using the new phrase “court of competent jurisdiction” in Fannie Mae’s sue-and-be-sued clause, retained the specific reference to the federal courts. Congress would., not have sought to eliminate federal question jurisdiction under Fannie Mae’s sue-and-be-sued clause by retaining the very words the Court had recently held sufficient to confer such jurisdiction in D’Oench. See Pirelli, 534 F.3d at 786 (“If Congress in 1954 did not want to continue to confer federal jurisdiction in Fannie Mae cases, it logically would have omitted the word ‘Federal’ from the statute, not attempted a bank shot by adding the words ‘of competent jurisdiction.’ ”).
*686 Congress’s contemporaneous treatment of the FSLIC shows that it knew a foolproof method to eliminate federal question jurisdiction from a sue-and-be-sued clause. That method was to follow Deveaux and simply to omit the reference to federal courts. In 1954, the same year Congress amended Fannie Mae’s -charter, Congress eliminated federal question jurisdiction for the FSLIC by deleting language in its charter that had authorized suit “in any court of law or equity, State or Federal.” Congress replaced it with language authorizing suit “in any court of competent jurisdiction in the United States.” See H.R.Rep. No. 83-1429, at 90; S.Rep. No. 88-1472, at 121. Since eliminating the reference to federal courts in the FSLIC amendment eliminated federal question jurisdiction over FSLIC suits brought under its sue-and-be-sued clause, Congress had no reason also to insert the phrase “court of competent jurisdiction” to accomplish the same thing. See Corley v. United States, 556 U.S. 303, 314, 129 S.Ct. 1558, 173-L.Ed.2d 443 (2009) (“[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous.... ” (internal quotation marks omitted)).
The dissent argues that our holding renders superfluous the phrase “court of competent jurisdiction.” Dissent at 690, 694-95. We disagree. As we explained above, the phrase served the purpose of eliminating an anachronistic reference to courts of law and equity. But if we need an additional purpose for the phrase, it is not hard to find one. In Osborn, the purpose of the phrase “in all State Courts having competent jurisdiction” was to emphasize that the clause did not authorize or require the exercise of subject matter jurisdiction by a state court with narrow, specialized jurisdiction. See 22 U.S. (9 Wheat.) at 817. Fannie Mae’s sue-and-be-sued clause can easily be read to have the same purpose. There was a general concern in the 1950s about the extent of federal authority to require state courts to hear cases brought pursuant to federal statutes. In Testa v. Katt, 330 U.S, 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947), the World War II-era federal Emergency Price Control Act required state courts to entertain civil suits for treble damages against merchants who charged a retail price exceeding the maximum set by federal law. The Act specified that federal and state courts had concurrent jurisdiction. Like Fannie Mae’s charter, the Act authorized suit “in any court of competent jurisdiction.” Id. at 387 n. 1, 67 S.Ct. 810. Rhode Island district and superior courts refused to hear a suit brought under the Act, contending that they were not obliged to hear a suit under a federal statute authorizing treble damages. Id. at 388, 67 S.Ct. 810. After determining that the state district and superior courts were courts “of competent jurisdiction” with “jurisdiction adequate and appropriate under established local law” to grant treble damages, the Court held in Testa that such courts were required to hear suits under the Act. Id. at 394, 67 S.Ct. 810.
It was in this historical setting that Congress added the phrase “court of competent jurisdiction” to Fannie Mae’s charter. Consistent with Testa, the phrase requires state courts of general or otherwise competent jurisdiction to hear claims brought by and against Fannie Mae. The phrase makes clear that state courts of specialized jurisdiction — such as family courts and small-claims courts — need not entertain suits that do not satisfy those courts’ jurisdictional requirements. Similarly, the phrase also makes clear that the sue-and-be-sued clause does not require federal courts of specialized jurisdiction — such as bankruptcy courts — to hear suits falling *687 outside those courts’ jurisdiction. Accord Pirelli, 534 F.3d at 785.
Finally, the dissent points to several circuit court cases decided after 1954 that interpret the phrase “court of competent jurisdiction” the same way the dissent does. Dissent at 692 (citing C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co., 903 F.2d 114, 118 (2d Cir.1990); Lomas & Nettleton Co. v. Pierce, 636 F.2d 971, 973 (5th Cir.1981); Bor-Son Bldg. Corp. v. Heller, 572 F.2d 174, 181 (8th Cir.1978); Lindy v. Lynn, 501 F.2d 1367, 1368 (3d Cir.1974)). But all of these cases predate Red Cross. The only post-Red Cross cases cited by the dissent are district court decisions. Dissent at 693 & n. 2.
B. Legislative History
Our dissenting colleague makes two arguments based on legislative history that deserve a focused response. First, the dissent points to the history of the 1954 amendments. The House Bill, which used the phrase “court of competent jurisdiction,” was designed to effectuate a transformation of Fannie Mae from a government-owned corporation to a privately owned, but still federally chartered, corporation. The Senate Bill, which retained the old phrase “in any court of law or equity,” would not have changed the ownership of Fannie Mae. The House Bill prevailed. The dissent concludes that the addition of the phrase “court of competent jurisdiction” in the 1954 amendments, taken from the House Bill, was designed to help effectuate the privatizing purpose of the bill.
Second, the dissent points to a 1974 amendment to Fannie Mae’s charter. The amendment allowed Fannie Mae to change its principal place of business from the District of Columbia to the Virginia or Maryland suburbs, but specified that Fannie Mae would nonetheless remain a District of Columbia corporation “for purposes of jurisdiction.” Housing and Community Development Act of 1974, Pub.L. No. 93-383, § 806(b), 88 Stat. 633, 727 (codified as amended at 12 U.S.C. § 1717(a)(2)). The dissent argues that if the 1954 sue-and-be-sued clause confers federal question jurisdiction, there would have been no need to confer District of Columbia corporate status on Fannie Mae in 1974, and thereby to confer diversity jurisdiction over suits to which Fannie Mae is a party.
1. The 1954 Amendments
The dissent relies heavily on the fact that the 1954 amendments were part of a broad reform reducing the federal government’s role in Fannie Mae. The change to Fannie Mae’s sue-and-be-sued clause, the dissent argues, must have furthered this “overriding purpose.” Dissent at 695.
The dissent is correct that the 1954 amendments sought to minimize the federal government’s ownership and operational role in Fannie Mae. But the 1954 amendments did not completely privatize Fannie Mae, which remained, even after 1954, a federally chartered corporation with specific statutory requirements for its corporate governance. Not every part of the 1954 amendment served Congress’s “overriding purpose” of privatization, and there is no reason that the phrase “court of competent jurisdiction” must be understood as serving this purpose, and there is no evidence showing that the change to Fannie Mae’s sue-and-be-sued clause was part of the move toward privatization. Whether federal courts have federal question jurisdiction over Fannie Mae cases has nothing to do with “[sjubstituting private sources of funds for Government expenditures,” the primary means by which the House sought to privatize Fannie Mae. H.R.Rep. No. 83-1429, at 2; see id. at 695- *688 96. The House Report went into great detail explaining the provisions of the 1954 amendments designed to privatize Fannie Mae. It never once mentioned the change to Fannie Mae’s sue-and-be-sued clause.
Even more telling is Congress’s simultaneous use of the identical phrase, “court of competent jurisdiction,” in contexts that had nothing to do with either Fannie Mae or privatization. In the same Act that amended Fannie Mae’s charter, Congress amended the FSLIC’s charter by replacing the phrase “court of law and equity” with the phrase “court of competent jurisdiction.” Housing Act of 1954 § 501(1). Also in the same Act, Congress added the phrase “court of competent jurisdiction” to the statute governing the Home Loan Bank Board (“HLBB”). Housing Act of 1954 § 503(2). The change to the FSLIC’s sue-and-be-sued clause was one of very few changes to the FSLIC’s charter. See H.R.Rep. No. 83-1429, at 90-91; S.Rep. No. 83-1472, at 121-22. As we discussed above, Congress did eliminate federal question jurisdiction for the FSLIC, but it did so by eliminating any mention of federal courts. The change to the HLBB’s sue-and-be-sued clause was unrelated to privatization. Indeed, with respect to jurisdiction, Congress made clear that it wanted to increase the HLBB’s access to federal courts. Both the House and Senate explained that they were providing the HLBB the “means ... to enforce the laws and regulations under which Federal savings and loan associations operate.” H.R.Rep. No. 83-1429, at 27; S.Rep. No. 83-1472, at 43. The Senate report specifically stated that HLBB “proceedings could be in the Federal judicial district in which the association is located.” S.Rep. No. 83-1472, at 43; see also H.R.Rep. No. 83-1429, at 27.
As a postscript to the 1954 amendments, in 1968 Congress split Fannie Mae into two corporations, Fannie Mae and the Government National Mortgage Association (“Ginnie Mae”). Housing and Urban Development Act of 1968, Pub.L. No. 90-448, § 801, 82 Stat. 476, 536 (1968) (codified as amended at 12 U.S.C. § 1716b). Both Fannie Mae and Ginnie Mae remained federally chartered, but Fannie Mae became entirely privately owned and Ginnie Mae became entirely federally owned. See id. Yet Fannie Mae and Gin-nie Mae kept precisely the same sue-and-be-sued clause, authorizing them both “to sue and be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal.” 12 U.S.C. § 1723a. If the phrase “court of competent jurisdiction” had been used in 1954 as part of an overall plan to privatize Fannie Mae and to limit its access to federal courts, Congress would not have used that same phrase in Ginnie Mae’s charter.
2. The 1974 Amendment
The 1974 amendment to the Housing Act changed the sentence “[Fannie Mae] shall maintain its principal office in the District of Columbia and shall be deemed, for purposes of venue in civil actions, to be a resident thereof’ to read, “[Fannie Mae] shall maintain its principal office in the District of Columbia or the metropolitan area thereof and shall be deemed, for purposes of jurisdiction and venue in civil actions, to be a District of Columbia corporation.” Housing and Community Development Act of 1974 § 806(b) (emphasis added).
The dissent argues that this change shows that Congress, in light of the elimination of federal question jurisdiction effectuated by the 1954 amendment to Fannie Mae’s sue-and-be-sued clause, sought to authorize diversity jurisdiction under 28 *689 U.S.C. § 1332 over suits in which Fannie Mae was a party. If it were clear that the 1974 amendment was intended to confer diversity jurisdiction over Fannie Mae cases, this could suggest that Congress belatedly realized that it had eliminated federal question jurisdiction by its amendment to Fannie Mae’s sue-and-be-sued clause, and now sought, twenty years later, to provide some basis for federal subject matter jurisdiction. See Dissent at 697-98. But we do not believe that this was the purpose of the 1974 amendment.
The “jurisdiction” to which the 1974 amendment refers is almost certainly not subject matter jurisdiction. The reference is almost certainly to personal jurisdiction. The purpose of the amendment was almost certainly to allow Fannie Mae to move its principal place of business out of the District of Columbia to the Virginia or Maryland suburbs, and at the same time to make clear that Fannie Mae would be subject to general personal jurisdiction only in the District even if it moved its principal place of business into the suburbs.
A corporation, like an individual, is subject to specific jurisdiction in a forum when its activities in that forum have given rise to the suit. See Goodyear Dunlop Tires Operations, S.A. v. Brown, — U.S. -, 131 S.Ct. 2846, 2853, 180 L.Ed.2d 796 (2011). A corporation is subject to general jurisdiction only where it is “essentially at home.” Id. at 2851; see Daimler AG v. Bauman, — U.S. -, 134 S.Ct. 746, 755-58, 187 L.Ed.2d 624 (2014). The two places where a corporation is “essentially at home” and therefore subject to general jurisdiction are its place of incorporation and its principal place of business. Daimler, 134 S.Ct. at 760. In the 1974 amendment, Congress, specified that Fannie Mae would be “deemed” a District of Columbia corporation “for purposes of jurisdiction” and thus subject to general jurisdiction only in the District, despite the possibility that it might move its principal place of business to the suburbs. See 12 U.S.C. § 1717(a)(2)(B).
The legislative history of the 1974 amendment is consistent with this reading. The House subcommittee summarized the amendment as “providing] that the principal office of FNMA be located in the District of Columbia metropolitan area, as well as in the District of Columbia, though for jurisdiction and venue purposes FNMA would be considered a District corporation.” Subcomm. on Hous. of the Comm, on Banking and Currency, 93d Cong., Compilation of the Housing and Community Development Act of 1974, at 277 (Comm. Print 1974); see also id. at 379 (summarizing the amendment as “permitting] the principal office of FNMA to be located in the District of Columbia metropolitan area, as well as in the District of Columbia, though for jurisdiction and venue purposes FNMA is to be considered a District resident”). The legislative history contains no mention of the possibility that the amendment was intended to authorize diversity jurisdiction based on newly conferred District of Columbia citizenship for Fannie Mae. Rather, the legislative history strongly suggests that the amendment was intended to allow Fannie Mae to move its principal place of business to the suburbs without effecting any change to the place where it would be subject to general jurisdiction. That is, Fannie Mae could move to the suburbs, “though for jurisdiction and venue purposes [it] would be considered a District corporation.” Id. at 277.
The dissent cites two other statutes as examples of Congress creating diversity jurisdiction for federally chartered corporations. Dissent at 697-98. But both statutes support reading the 1974 Fannie Mae amendment as referring to personal rather *690 than subject matter jurisdiction. Both statutes expressly refer to the corporation a “citizen” of the relevant forum. See 7 U.S.C. § 941(e) (“The telephone bank ... shall, for the purposes of jurisdiction and venue, be deemed a citizen and resident of the District of Columbia.” (emphasis added)); 28 U.S.C. § 1348 (“All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located.” (emphasis added)). Federal law defines diversity jurisdiction in terms of citizenship, 28 U.S.C. § 1332(a), so when Congress sought to authorize diversity jurisdiction in these two statutes, it used the word “citizen.” Unlike these two statutes, Fannie Mae’s 1974 amendment does not use the word “citizen.” Rather, it provides only that Fannie Mae is a “District of Columbia corporation.” 12 U.S.C. § 1717(a)(2)(B).
Conclusion
We hold that the sue-and-be-sued clause in Fannie Mae’s federal charter confers federal question jurisdiction over suits in which Fannie Mae is a party. Accordingly, we hold that the district court had subject matter jurisdiction over plaintiffs’ claims. We affirm the district court’s dismissal of plaintiffs’ claims for the reasons stated in our previous unpublished disposition. Lightfoot, 465 Fed.Appx. at 669.
AFFIRMED.