# United States Court of Appeals
## For the First Circuit

No. 14-2148

FEDERAL HOME LOAN BANK OF BOSTON,

Plaintiff, Appellant,

v.

MOODY'S CORPORATION;
MOODY'S INVESTORS SERVICE, INC.,

Defendants, Appellees,

ALLY FINANCIAL INC., f/k/a GMAC, INC.; BCAP LLC; BARCLAYS CAPITAL, INC.; BEAR STEARNS ASSET BACKED SECURITIES I LLC, f/k/a The Bear Stearns Companies, Inc.; CHEVY CHASE FUNDING, LLC; CITIMORTGAGE, INC.; CITICORP MORTGAGE SECURITIES, INC.; CITIGROUP FINANCIAL PRODUCTS, INC.; CITIGROUP GLOBAL MARKETS REALTY CORP.; CITIGROUP GLOBAL MARKETS, INC.; CITIGROUP MORTGAGE LOAN TRUST, INC.; CITIGROUP, INC.; CREDIT SUISSE (USA), INC.; CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.; CREDIT SUISSE HOLDINGS (USA), INC.; CREDIT SUISSE SECURITIES (USA) LLC; DB STRUCTURED PRODUCTS, INC.; DB U.S. FINANCIAL MARKET HOLDING CORPORATION; DLJ MORTGAGE CAPITAL, INC.; DEUTSCHE ALT-A SECURITIES, INC.; DEUTSCHE BANK SECURITIES, INC.; EMC MORTGAGE CORPORATION; LANA FRANKS; RICHARD S. FULD, JR.; GMAC MORTGAGE GROUP, LLC; EDWARD GRIEB; IMH ASSETS CORP.; IMPAC FUNDING CORPORATION; IMPAC MORTGAGE HOLDINGS, INC.; IMPAC SECURED ASSETS CORP.; J.P. MORGAN ACCEPTANCE CORPORATION I; J.P. MORGAN CHASE & CO.; JP MORGAN SECURITIES HOLDINGS, LLC; JPMORGAN ACQUISITION CORP.; JPMORGAN CHASE BANK, N.A.; MIT HOLDINGS, INC.; RICHARD MCKINNEY; MORGAN STANLEY; MORGAN STANLEY & CO., INC.; MORGAN STANLEY CAPITAL I INC.; MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS, LLC; MORTGAGE ASSET SECURITIZATION TRANSACTIONS, INC.; MORTGAGEIT SECURITIES CORP; MORTGAGEIT, INC.; MORTGAGEIT HOLDINGS, INC.; NOMURA ASSET ACCEPTANCE CORPORATION; NOMURA CREDIT & CAPITAL, INC.; NOMURA HOLDING AMERICA, INC.; NOMURA SECURITIES INTERNATIONAL, INC.; BARRY J. O'BRIEN; CHRISTOPHER M. O'MEARA; RBS ACCEPTANCE INC., f/k/a Greenwich Capital Acceptance, Inc.; RBS FINANCIAL

PRODUCTS, INC., f/k/a Greenwich Capital Financial Products, Inc.; RBS HOLDINGS USA INC.; RBS SECURITIES INC., f/k/a Greenwich Capital Markets, Inc.; RESIDENTIAL ACCREDIT LOANS, INC.; RESIDENTIAL FUNDING COMPANY, LLC, f/k/a Residential Funding Corporation; KRISTINE SMITH; STRUCTURED ASSET MORTGAGE INVESTMENTS II INC.; JAMES J. SULLIVAN; SAMIR TABET; THE BEAR STEARNS COMPANIES LLC; UBS AMERICAS, INC.; UBS REAL ESTATE SECURITIES, INC.; UBS SECURITIES, LLC; WAMU CAPITAL CORP.; WELLS FARGO & COMPANY; WELLS FARGO ASSET SECURITIES CORPORATION; WELLS FARGO BANK, N.A.; MARK ZUSY; BANC OF AMERICA FUNDING CORPORATION; BANK OF AMERICA CORPORATION; BANK OF AMERICA, NATIONAL ASSOCIATION; CAPITAL ONE FINANCIAL CORPORATION; CAPITAL ONE, NATIONAL ASSOCIATION; COUNTRYWIDE FINANCIAL CORPORATION; COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE SECURITIES CORPORATION; CWALT, INC.; CWMBS, INC.; FITCH, INC.; GOLDMAN, SACHS & CO.; MERRILL LYNCH MORTGAGE INVESTORS, INC.; MERRILL LYNCH & CO., INC.; MERRILL LYNCH MORTGAGE LENDING, INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.; SANDLER, O'NEILL & PARTNERS, L.P.; JOHN DOES 1-50; STANDARD & POOR'S FINANCIAL SERVICES, LLC; THE MCGRAW HILL COMPANIES, INC.,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. George A. O'Toole, Jr., U.S. District Judge]

---

Before

Thompson and Kayatta, Circuit Judges,
and Mastroianni,* District Judge.

---

Benjamin Gould, with whom Derek W. Loeser; Amy Williams-Derry; Gary A. Gotto; Lynn L. Sarko; Keller Rohrback L.L.P.; Thomas G. Shapiro; Adam M. Stewart; and Shapiro Haber & Urmy LLP were on brief, for appellant.

Joshua M. Rubins, with whom Ralph T. Lepore, III; Michael T. Maroney; Nathaniel F. Hulme; Holland & Knight LLP; Glenn C. Edwards; James J. Coster; and Satterlee Stephens Burke & Burke LLP were on brief, for appellees.

---

* Of the District of Massachusetts, sitting by designation.

May 2, 2016

**THOMPSON**, **Circuit Judge**.  The allegations in this case hearken back to the days of the recent financial crisis and the near-collapse of the mortgage-backed securities market.  The issues we deal with today, though, are of the technical, legalistic variety:  we have to figure out whether the district court erred in finding that it lacks statutory power to transfer this action to another federal court in which personal jurisdiction over certain defending parties may be met.  Concluding that the district court does in fact have authority to effectuate such a transfer, we vacate its dismissal order and remand for further proceedings.

## WHAT THE CASE IS ABOUT

In April of 2011, appellant Federal Home Loan Bank of Boston ("Bank"), a federally-chartered entity pursuant to 12 U.S.C. § 1432(a) (more on this statute later), filed suit against a slew of defendants in Massachusetts state court.  These defendants included appellees Moody's Corporation and Moody's Investors Service, Inc. (collectively, "Moody's").  The Bank's complaint generally alleges that the Bank follows a conservative investment philosophy and that it is only able to purchase mortgage-backed securities that have a triple-A rating.  So, whenever it bought a mortgage-backed security the Bank made sure that it had received a triple-A rating from a rating agency like Moody's.  Briefly, the Bank alleges that various rating agencies, including Moody's, falsely gave out triple-A ratings to mortgage-

- 4 -

backed securities they knew were far riskier than indicated by their pristine ratings. Per the Bank, its unwitting purchase of "low-quality, high-risk" securities -- all of which have since been downgraded to "junk" status -- has caused it to suffer losses on the order of hundreds of millions of dollars.

But none of these allegations matter to us today. The issues we have to contend with, while perhaps not as sexy as fraud claims involving bucketloads of money, are nevertheless of tremendous import to our federal system. What we're talking about today are both flavors of jurisdiction -- subject-matter and personal. So, on we go.

## HOW THE CASE GOT HERE

Some of the defendants (but not Moody's) removed the case to the Massachusetts federal district court. In doing so, they relied on the fact that the Bank is federally chartered to invoke the district court's original jurisdiction.[1] The following day, Moody's -- "appear[ing] specifically for the purpose of removal only and reserv[ing] all defenses as to jurisdiction . . . available to it in this action" -- filed a Notice of Consent to Removal with the district court.

---

[1] The Notice of Removal also asserted that the district court had original jurisdiction because the action was "related to" various ongoing bankruptcy cases. As it turns out, we won't need to touch this jurisdictional allegation to resolve the appeal. And so we make no further mention of it.

Moody's next moved to dismiss on the ground that the Massachusetts district court lacks personal jurisdiction over it. The details of its legal position are not especially important here. It is enough to note that Moody's asserted that it is incorporated in Delaware, that its headquarters are located in New York, that it has only limited contacts with Massachusetts, and that the ratings the Bank complained about were all prepared by Moody's analysts in New York and issued from its New York headquarters. Based on all this, Moody's argued that the Massachusetts district court may not exercise general or specific jurisdiction over it.[2]

---

[2] Federal courts "differentiate[] between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8, 9 (1984)). When a court "exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum [State], the State has been said to be exercising 'general jurisdiction' over the defendant." Helicopteros Nacionales, 466 U.S. at 414 n.9. The proper exercise of "general jurisdiction requires affiliations 'so "continuous and systematic" as to render [the foreign corporation] essentially at home in the forum State.'" Daimler AG v. Bauman, 134 S. Ct. 746, 758 n.11 (2014) (alteration in original) (quoting Goodyear Dunlop, 131 S. Ct. at 2851).

On the other hand, when a court "exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum [State], the State is exercising 'specific jurisdiction' over the defendant." Helicopteros Nacionales, 466 U.S. at 414 n.8. "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."

- 6 -

The district judge disagreed. He concluded that the contacts Moody's had with Massachusetts were sufficiently extensive to subject it to general jurisdiction in the Commonwealth's courts, and that it was reasonable to exercise personal jurisdiction over it in this case. Having made these findings, the district judge denied the motion to dismiss. And he denied the motion for reconsideration Moody's filed, too.

About two months later, the Supreme Court released its opinion in Daimler AG v. Bauman, 134 S. Ct. 746 (2014), a case which addressed the circumstances in which a court may subject a defendant to general personal jurisdiction. Arguing that the Supreme Court had just limited the reach of a court's jurisdiction, Moody's renewed its motion for reconsideration. The Bank opposed the motion. But as a backup strategy, and relying on 28 U.S.C. § 1631 and 28 U.S.C. § 1406(a), the Bank asked the district judge -- should he conclude that personal jurisdiction is lacking after Daimler AG -- to sever its claims against Moody's from those against the other defendants and transfer them to the Southern District of New York.

For Moody's, the third time around turned out to be the charm: the district judge agreed with its take on Daimler AG and concluded personal jurisdiction was lacking in Massachusetts.

Goodyear Dunlop, 131 S. Ct. at 2851 (internal quotation marks omitted).

- 7 -

Further, Moody's won a double victory, with the district judge also denying the Bank's motion to sever and transfer its claims against Moody's. In denying this motion, the judge concluded he did not have the power to transfer the claims against Moody's under either statute the Bank relied upon. Accordingly, he dismissed the claims against Moody's for lack of personal jurisdiction, and entered separate and final judgment in favor of Moody's.[3] The

[3] Because the litigation could continue against other defendants in Massachusetts, the district court entered final judgment as to Moody's under Federal Rule of Civil Procedure 54(b), which allows the district court to "direct entry of a final judgment as to one or more, but fewer than all, . . . parties," but "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). For entry of a Rule 54(b) judgment to be proper, "[a] district court must first determine that it is dealing with a 'final judgment,'" Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7 (1980), that "provides an ultimate disposition on a 'cognizable claim for relief,'" Bos. Prop. Exch. Transfer Co. v. Iantosca, 720 F.3d 1, 7 (1st Cir. 2013) (quoting Curtiss-Wright, 446 U.S. at 7). The district court must then determine whether its final decision should be immediately appealable by expressly deciding "whether there is any just reason for delay." Curtiss-Wright, 446 U.S. at 8.

"We review the district court's finality determination and its finding that there is no just reason to delay for abuse of discretion." González Figueroa v. J.C. Penney P.R., Inc., 568 F.3d 313, 317 (1st Cir. 2009). The ruling dismissing all claims against Moody's for lack of personal jurisdiction clearly "dispose[s] of all the rights and liabilities of at least one party as to at least one claim" and so satisfies Rule 54(b)'s finality requirement. State St. Bank & Tr. Co. v. Brockrim, Inc., 87 F.3d 1487, 1489 (1st Cir. 1996). And because the entry of judgment against Moody's rests on purely legal grounds distinct from the factual questions of liability being litigated by the remaining parties, we create no problematic "imbrication between the dismissed [parties] and the surviving [parties]" by hearing an immediate appeal of the final order. Spiegel v. Trustees of Tufts Coll., 843 F.2d 38, 45 (1st Cir. 1998). Indeed, judicial economy

- 8 -

Bank's timely appeal of the dismissal and of the denial of its motion to sever and transfer followed.

## SHOULD WE EVEN BE IN FEDERAL COURT?
## (SUBJECT MATTER JURISDICTION)

Both the Bank and Moody's tell us that this action was properly removed to federal court based on the Bank's federal corporate charter codified at 12 U.S.C. § 1432(a). The Bank cited Lightfoot v. Cendant Mortgage Corp., 769 F.3d 681, 683-87 (9th Cir. 2014), petition for cert. filed, No. 14-1055, 2015 WL 905913 (U.S. filed Feb. 17, 2015), a case in which the Bank says the Ninth Circuit concluded federal subject matter jurisdiction existed based on Fannie Mae's "materially identical charter" to the Bank's own. Moody's does not challenge the Bank's view of Lightfoot.[4]

But "[p]arties cannot confer subject matter jurisdiction on either a trial or an appellate court by indolence, oversight,

---

weighs in favor of prompt resolution of the jurisdictional issues implicated by this appeal so that the parties can potentially proceed to the merits in an appropriate venue. See Comite Pro Rescate de la Salud v. P.R. Aqueduct & Sewer Auth'y, 888 F.2d 180, 184 (1st Cir. 1989). And so, we conclude the district court did not abuse its discretion in finding no just reason for delaying entry of final judgment as to Moody's. Further, because the district court's proper entry of judgment under Rule 54(b) gives us jurisdiction to hear the Bank's appeal, see 28 U.S.C. § 1921, the Bank's separately-docketed petition seeking leave to take an interlocutory appeal, see Fed. Home Loan Bank of Boston v. Moody's Corp. et al, No. 14-8046 (1st Cir. filed Oct. 10, 2014), shall be denied as moot.

[4] Neither party claims that we have diversity jurisdiction under 28 U.S.C. § 1332.

acquiescence, or consent." United States v. Horn, 29 F.3d 754, 768 (1st Cir. 1994). And we are "powerless to act in the absence of subject matter jurisdiction." Espinal-Dominguez v. Puerto Rico, 352 F.3d 490, 495 (1st Cir. 2003). This court, therefore, has "an unflagging obligation to notice jurisdictional defects and to pursue them on our own initiative." Harrison v. Granite Bay Care, Inc., 811 F.3d 36, 38 (1st Cir. 2016) (quoting Espinal-Dominguez, 352 F.3d at 495).[5]

Our starting point is the applicable statutory language. The Bank is a federally-chartered entity under 12 U.S.C. § 1432(a), which states that each Federal Home Loan Bank "in its [own] name . . . shall have power . . . to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1432(a). To keep things simple, we'll refer to this clause (and others generally like it) as a "sue-and-be-sued" clause.

The Supreme Court squarely addressed the jurisdictional effect of sue-and-be-sued clauses more than two decades ago in American National Red Cross v. S.G., 505 U.S. 247 (1992) ("Red

---

[5] We quizzed the Bank's counsel at oral argument on the basis of federal subject matter jurisdiction. Counsel reiterated the jurisdictional statements set forth in the Bank's brief and requested the opportunity to submit supplemental briefing if the court felt there was any question as to the propriety of federal jurisdiction. We now conclude (without the need for further briefing) that federal subject matter jurisdiction is proper.

- 10 -

Cross"). The sue-and-be-sued clause at issue "authorize[d] the [Red Cross] 'to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States.'" Red Cross, 505 U.S. at 248 (quoting 36 U.S.C. § 2 (1988)). Relying on this language, the Red Cross removed to federal court a tort action filed against it in New Hampshire state court. Id. at 248-49.[6] So the question for the Court was whether the sue-and-be-sued clause in the Red Cross's federal charter "confers original jurisdiction on federal courts over all cases to which the Red Cross is a party, with the consequence that the organization is thereby authorized to remove from state to federal court any state-law action it is defending." Id. at 248.

To get the answer, the Court delved into its jurisprudence (dating back to 1809) interpreting sue-and-be-sued clauses applicable to other federally-chartered entities. Id. at 252. Its prior cases, the Court said, "support the rule that a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." Id. at 255. Turning to the Red Cross, the Supreme Court found that "[t]he rule established in these [earlier] cases makes it clear that the Red Cross Charter's

_____

[6] The Red Cross also invoked diversity jurisdiction, id. at 249, but the Supreme Court did not address this jurisdictional basis.

'sue and be sued' provision should be read to confer jurisdiction." Id. at 257; see also id. at 268 (Scalia, J. dissenting) (describing the majority opinion as assuming that "our cases have created what might be termed a phrase of art, whereby a sue and be sued clause confers federal jurisdiction 'if, but only if, it specifically mentions the federal courts'" (quoting id. at 255 (majority opinion)) (other internal quotation marks omitted)). Because the clause "expressly authoriz[es] the organization to sue and be sued in federal courts," the Court concluded that it "extends beyond a mere grant of general corporate capacity to sue, and suffices to confer federal jurisdiction." Id. at 257.[7]

Getting back to our case, we see that the Bank's sue-and-be-sued clause is similar, but not identical, to the Red Cross's -- the Bank's includes language specifying that it may sue and be sued "in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1432(a) (emphasis added). The question for us is whether this additional verbiage makes a difference in whether the Bank is authorized to litigate in federal court. Once again, we are not the first court to have considered the issue.

---

[7] The Court also pointed out that the statutory grant of original jurisdiction to the federal courts poses no constitutional problem: "Article III's 'arising under' jurisdiction is broad enough to authorize Congress to confer federal-court jurisdiction over actions involving federally chartered corporations." Id. at 264.

- 12 -

In *Lightfoot* v. *Cendant Mortgage Corp.*, 769 F.3d 681 (9th Cir. 2014), the Ninth Circuit addressed the sue-and-be-sued clause in Fannie Mae's Federal Charter. Fannie Mae's clause is identical to the Bank's, authorizing it "to sue and be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." *Id.* at 683 (quoting 12 U.S.C. § 1723a(a)). The majority of a divided panel concluded that *Red Cross*'s "rule resolves this case," *id.* at 684 (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. ex rel. Fed. Nat'l Mortg. Ass'n* v. *Raines*, 534 F.3d 779, 784 (D.C. Cir. 2008)),[8] and found that Fannie Mae's "federal charter confers federal question jurisdiction over claims brought by or against" it, *id.* at 682.

The majority addressed the dissenting judge's position that the phrase "court of competent jurisdiction" -- added to the statute in a 1954 amendment -- meant that Congress intended to confer on Fannie Mae only the capacity to sue and be sued (as opposed to ordaining original jurisdiction in the federal courts). See *id.* at 684. The majority observed that the statute conferred subject matter jurisdiction on the federal courts even before the 1954 amendment, and it concluded that if Congress had wanted to eliminate such jurisdiction in 1954, "it logically would have

---

[8] In *Pirelli*, a majority of a panel of the D.C. Circuit had also concluded that "Fannie Mae's sue-and-be-sued clause confers federal subject-matter jurisdiction." *Pirelli*, 534 F.3d at 788.

omitted the word 'Federal' from the statute."[9]  Id. at 685 (quoting

Pirelli, 534 F.3d at 786).  The majority also determined that the

addition of the phrase "of competent jurisdiction" (1) "makes clear

that state courts of specialized jurisdiction -- such as family

courts and small-claims courts -- need not entertain suits that do

not satisfy those courts' jurisdictional requirements," id. at

686, and (2) "makes clear that the sue-and-be-sued clause does not

require federal courts of specialized jurisdiction -- such as

bankruptcy courts -- to hear suits falling outside those courts'

jurisdiction," id. at 686-87 (citing Pirelli, 534 F.3d at 785).[10]

---

[9] Recall that the post-1954-amendment statute read "to sue and be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." Lightfoot, 769 F.3d at 683 (emphasis added) (quoting 12 U.S.C. § 1723(a)).

[10] We have reviewed the opinions of the dissenting justices in Red Cross, along with the dissent in Lightfoot and criticism by the concurring judge in Pirelli.  It appears to us that each dissent or concurrence is motivated in large part by dissatisfaction with the rule fashioned by the majority of the Supreme Court in Red Cross.  See, e.g., Red Cross, 505 U.S. at 267 (Scalia, J. dissenting) (positing, based on the Red Cross's charter, that "[w]ords conferring authority upon a corporation are a most illogical means of conferring jurisdiction upon a court, and would not normally be understood that way" (emphasis omitted)); Pirelli, 534 F.3d at 795 (Brown, J., concurring in the judgment) (describing the majority, in interpreting Red Cross as setting forth a rule that a "sue-and-be-sued clause creates jurisdiction simply because it mentions the federal courts," as fashioning and applying a "silly test" not enshrined by Red Cross (emphasis omitted)); see also Lightfoot, 769 F.3d at 691 (Stein, J., dissenting) (arguing that Red Cross "did not announce any new rule of law," or establish a "magic-words test that ends all inquiry the moment we come across the word 'federal'" in a sue-and-be-sued clause).

We see no principled reason why Red Cross's rule should not apply in the same way to the Bank's charter as the Lightfoot and Pirelli majorities found it applied to Fannie Mae's. Just like the Red Cross and Fannie Mae charters, the Bank's includes language that is "necessary and sufficient" to confer federal jurisdiction, and we agree with the Ninth Circuit that the additional phrase, "of competent jurisdiction," does not take away that jurisdiction. Rather, it delineates which federal courts may adjudicate claims involving the Bank.

Moreover, Congress made numerous amendments to the Bank's charter statute (12 U.S.C. § 1432(a)) in 1999, but it left the sue-and-be-sued clause unchanged. Certainly by 1999 Congress was well-aware of the language the Supreme Court in Red Cross considered "necessary and sufficient to confer jurisdiction" on the federal courts. Cf. Castañeda v. Souza, 810 F.3d 15, 34 (1st Cir. 2015) (en banc) (noting we "assume that Congress is aware of existing law when it passes legislation" and that it is also aware of judicial interpretations of its statutes (quoting Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990))). Logically, had Congress desired to strip the federal courts of jurisdiction to hear and decide claims involving the Bank, it would have done so in 1999

---

But our role is not to opine on the wisdom of Supreme Court precedent. Instead, we are to determine whether that precedent applies in a particular case and, if so, apply it.

when it passed amendments that reworked the very same section containing the sue-and-be-sued clause.  That it did not do so speaks volumes, we think.  Cf. Pirelli, 534 F.3d at 786 (declining to conclude that Congress "attempted a bank shot" in amending Fannie Mae's charter by adding "of competent jurisdiction" when it could have simply deleted the word "Federal" had it wanted to strip away original federal jurisdiction).  Accordingly, we find that the Bank's claims arise under federal law and that the district court had subject matter jurisdiction over the Bank's claims against Moody's.

### CAN THIS CASE BE SENT SOMEWHERE ELSE? (TRANSFER UNDER 28 U.S.C. § 1631)

### 1. Overview and Standard of Review

We now reach the question of which federal court should decide the Bank's claims.[11]  The statute at issue is titled "[t]ransfer to cure want of jurisdiction," and it provides the following:

> Whenever a civil action is filed in a court as
> defined in section 610 of this title[12] or an

---

[11] The parties agree that, in light of Daimler AG v. Bauman, 134 S. Ct. 746 (2014), Moody's is not subject to personal jurisdiction in Massachusetts in connection with this litigation. Given that lack of personal jurisdiction is a waivable defense, see, e.g., Vázquez-Robles v. CommoLoCo, Inc., 757 F.3d 1, 3 (1st Cir. 2014), we need not address the issue sua sponte (as we did with subject matter jurisdiction).  So we will simply assume the parties are right.

[12] Section 610 defines the word "courts" to "include[] the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone,

- 16 -

appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (emphasis added).

The district judge concluded that this statute permits transfer only in cases where the court lacks subject matter jurisdiction. Since the problem in this case is a lack of personal jurisdiction, the judge dismissed the Bank's claims against Moody's.[13]

Determining the scope of a court's authority to transfer the Bank's claims under § 1631 presents a question of law we review de novo. See Hannon v. City of Newton, 744 F.3d 759, 765 (1st Cir. 2014). In a nutshell, the Bank says that the statute is broad enough to permit transfer where there is no personal jurisdiction, while Moody's defends the district court's narrower view that it

---

the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade." 28 U.S.C. § 610.

[13] The judge also denied the Bank's fallback request to transfer under 28 U.S.C. § 1406(a), and we'll explain later why we don't need to reach this statute in today's opinion.

only applies where there is no subject matter jurisdiction. Because each side relies to such a great extent on Congress's purposes in enacting § 1631, along with its legislative history, we'll begin there to put their arguments in context. This will also serve as a springboard for our own analysis.

We discussed the history of § 1631 in Britell v. United States, 318 F.3d 70 (1st Cir. 2003). Congress enacted the statute in the wake of Investment Co. Institute v. Board of Governors of the Federal Reserve System, 551 F.2d 1270 (D.C. Cir. 1977), a case in which the Court of Appeals for the D.C. Circuit "acknowledged an ambiguity involving which of two courts had appellate jurisdiction" over a particular type of claim. See Britell, 318 F.3d at 73. The D.C. court opined that, in the future, counsel should simply "file petitions in both courts . . . if there is any doubt" about which one has appellate jurisdiction. See id. at 73-74 (quoting Inv. Co. Inst., 551 F.2d at 1282). Believing the court's suggestion to be a waste of resources (both for the parties and the judicial system as a whole), Judge Harold Leventhal authored a concurring opinion in which he "express[ed] the hope" that Congress would enact "a general statute permitting transfer between district courts and courts of appeals in the interest of justice." Inv. Co. Inst., 551 F.2d at 1283 (Leventhal, J. concurring).

As Moody's points out, Congress went to work on a legislative fix. A 1981 Senate Report regarding the proposed legislation that eventually became 28 U.S.C. § 1631 reveals that it

> would authorize the court in which a case is improperly filed to transfer it to a court where <u>subject matter jurisdiction</u> is proper. . . . This provision is broadly drafted to allow transfer between any two federal courts. Although most problems of misfiling have occurred in the district and circuit courts, others have occurred in the Court of International Trade and the Temporary Emergency Court of Appeals. Some others may occur in the Court of Appeals for the Federal Circuit. The broadly drafted provisions of Section [1631] will help avoid all of these situations.

S. Rep. No. 97-275, at 30 (1981), <u>reprinted</u> <u>in</u> 1982 U.S.C.C.A.N. 11, 40 (emphasis added). A second passage from the Report mentions subject matter jurisdiction, too:

> In recent years much confusion has been engendered by provisions of existing law that leave unclear which of two or more federal courts [--] including courts at both the trial and appellate level -- have <u>subject matter jurisdiction</u> over certain categories of civil actions. The problem has been particularly acute in the area of administrative law where misfilings and dual filings have become commonplace. The uncertainty in some statutes regarding which court has review authority creates an unnecessary risk that a litigant may find himself without a remedy because of a lawyer's error or a technicality of procedures.

<u>Id.</u> at 11, <u>reprinted</u> <u>in</u> 1982 U.S.C.C.A.N. at 21 (emphasis added).

Moody's also tells us that § 1631 was passed as part of the Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, 96 Stat. 25 ("Improvement Act"), which established the Federal Circuit and "which, legislators believed, could give rise to yet additional risks of uncertainty as to the proper tribunal for hearing certain types of actions." Appellees' Br. at 25. Against this backdrop, Moody's says in its brief, Congress explained that § 1631 would allow the newly-created Court of Appeals for the Federal Circuit "to transfer cases to the proper circuit court, or vice versa," Appellees' Br. at 25-26 n.16 (quoting S. Rep. No. 97-275, at 20, reprinted in 1982 U.S.C.C.A.N. at 30), and that "one purpose" of § 1631 was "to permit the transfer of an action or appeal where such has been lodged with the wrong court of appeals," id. (quoting 127 Cong. Rec. S14683-723, at 702 (daily ed. Dec. 8, 1981)).

In addition, Moody's directs our attention to additional information about the drafting process it says should bear on our interpretation of the statute. Moody's quotes a letter from Judge Leventhal to a Congressman that it construes as advocating for a statute that would only allow transfer power in cases lacking subject matter jurisdiction. Moody's also tells us that "[e]arly versions of § 1631" -- which we take to mean pre-enactment drafts -- resembled a then-extant statute that allowed the federal Court of Claims, when faced with an action over which the federal

- 20 -

district courts have exclusive jurisdiction, to transfer the action to an appropriate district court. Moody's sees the early similarity between § 1631 and this narrow transfer mechanism as a further indication that Congress only intended § 1631 to address subject matter jurisdiction.

Needless to say, the Bank sees things differently. First, it emphasizes that we should not even be looking at legislative history "because 'Congress's authoritative statement is the statutory text, not the legislative history,'" Appellant's Br. at 33 (quoting Chamber of Commerce v. Whiting, 131 S. Ct. 1968, 1980 (2011) (internal quotation marks omitted)), and here the text says it all, and says it clearly. But in any event, the Bank argues, neither Judge Leventhal's concurrence nor the legislative history precludes a finding that § 1631 may be used to correct defects in subject matter or personal jurisdiction.

The Bank points out that Judge Leventhal "urged Congress to enact 'a general statute permitting transfer between district courts and courts of appeals in the interest of justice, including specifically but not exclusively those instances when complaints are filed in what later proves to be the "wrong" court.'" Appellant's Br. at 35 (quoting Inv. Co. Inst., 551 F.2d at 1283 (Leventhal, J. concurring) (emphases the Bank's)). According to the Bank, Judge Leventhal's references to a "general statute" and its application "specifically but not exclusively" to cases filed

in the "wrong" court demonstrate that he had more on his mind than just subject matter jurisdiction. The Bank also says the phrase "the wrong court" could just as easily apply to a court that lacks personal jurisdiction as it does to a court lacking subject matter jurisdiction. And, responding to Moody's contention that Judge Leventhal's involvement in the drafting process showed that he advocated a narrow statute, the Bank points to a law review article that it says discusses how Judge Leventhal more broadly "emphasized [to Congress] the need to provide for transfer between any two federal courts." Appellant's Br. at 36 (quoting Jeffrey W. Tayon, The Federal Transfer Statute: 28 U.S.C. § 1631, 29 S. Tex. L. Rev. 189, 199 n.58 (1987)).

The Bank takes a similar tack when it comes to other legislative history materials. It says that even if Congress specifically discussed transfers for lack of subject matter jurisdiction, the actual statute it enacted is broader and unambiguously applies wherever either jurisdictional defect is present. And, in the Bank's view, the legislative history does not contradict the plain text of the statute Congress actually passed. So it says we can apply the statute as written and at the same time respect congressional intent.

### 2. Our Take

While the parties have presented us with a bevy of arguments based on their detailed look at § 1631's interesting and

involved history, we start our analysis from a different point. Indeed, as the Bank reminds, "[o]ur interpretive task begins with the statute's text." United States v. Godin, 534 F.3d 51, 56 (1st Cir. 2008). At this opening stage, we must examine the "plain meaning of the words," id., both in the "specific context in which that language is used, and the broader context of the statute as a whole," Yates v. United States, 135 S. Ct. 1074, 1082 (2015) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)); see also Godin, 534 F.3d at 56.

"If the meaning of the text is unambiguous our task ends there," Godin, 534 F.3d at 56, and we must "enforce [the statute] according to its terms" so long as the result "required by the text is not absurd," In re Rudler, 576 F.3d 38, 44 (1st Cir. 2009) (internal quotation marks omitted); see also In re Jarvis, 53 F.3d 416, 419 (1st Cir. 1995) ("If possible, a statute should be construed in a way that conforms to the plain meaning of its text."). When a statute is unambiguous, "we consider Congress's intent only to be certain that the statute's plain meaning does not lead to 'absurd' results." Rudler, 576 F.3d at 44-45 (quoting Lamie v. United States, 540 U.S. 526, 534 (2004)). But see Kloeckner v. Solis, 133 S. Ct. 596, 607 n.4 (2012) (stating that "even the most formidable argument concerning [a] statute's purposes could not overcome the clarity we find in [that] statute's text").

### i. Statutory Text

In applying these teachings, we focus first on the text. And in doing so, we immediately see that § 1631's plain language talks about "jurisdiction" and "want of jurisdiction."  It does not further delineate whether "jurisdiction" is meant to refer to subject matter jurisdiction, personal jurisdiction, or both.  This lack of specificity very nicely and reasonably lends itself to an interpretation that it includes both well-known jurisdictional flavors.  Compare Intera Corp. v. Henderson, 428 F.3d 605, 620-21 (6th Cir. 2005) (the unmodified "jurisdiction" in Federal Rule of Civil Procedure 41(b) covers personal jurisdiction), with Havens v. Mabus, 759 F.3d 91, 98 (D.C. Cir. 2014) (Rule 41(b) also covers subject matter jurisdiction).

Certainly, the fact that the phrase "want of jurisdiction" appears without any qualifier does not obviously limit its reach to subject matter jurisdiction alone:  for that to be the case, we would expect the statute to read "want of subject matter jurisdiction."  Since it doesn't say that, the statute on its face does not plainly restrict a federal court's authority to transfer an action to those cases in which it lacks subject matter jurisdiction.

And, significantly, "want of jurisdiction" is a phrase with an established meaning; Black's Law Dictionary defines "want of jurisdiction" as "[a] court's lack of power to act in a

particular way or to give certain kinds of relief." Want of Jurisdiction, Black's Law Dictionary (10th ed. 2014). Black's goes on to explain that, where there is a want of jurisdiction, "[a] court . . . may lack authority over a person or the subject matter of a lawsuit." Id. This definition is consistent with -- indeed, it mirrors -- the Supreme Court's use of the phrase. Milliken v. Meyer, 311 U.S. 457, 462 (1940) ("Where a judgment rendered in one state is challenged in another, a want of jurisdiction over either the person or the subject matter is of course open to inquiry."). Therefore, we conclude that "want of jurisdiction" encompasses both personal and subject matter jurisdiction. It follows that § 1631's plain text supports a finding that its reference to "want of jurisdiction" embraces both types of jurisdiction and permits a federal court to order transfer where it lacks either.[14]

---

[14] Contrary to what Moody's asserts, we do not believe the fact that § 1631 applies to a wide range of courts and scenarios in which it is more common that any "want of jurisdiction" will be a lack of subject matter, as opposed to personal, jurisdiction renders the statute ambiguous. Nobody disputes, after all, that § 1631 covers cases in which subject matter jurisdiction is lacking, and we have just explained how the statute's plain text does not limit its application to that particular jurisdictional defect.

Further, we are not persuaded by Moody's when it says that § 1631's mandatory directive that a court "shall" transfer if it be in the interest of justice to do so implies that Congress intended the statute to cover subject matter jurisdiction alone. The fact that a court has no duty to sua sponte notice a lack of personal jurisdiction even where no party has raised the issue -- unlike its obligation to do so with subject matter jurisdiction --

- 25 -

Furthermore, the "broader context of the statute as a whole," Yates, 135 S. Ct. at 1082 (internal quotation mark omitted), supports a more expansive reading of "jurisdiction." This is because Congress has placed the qualifier "subject-matter" before "jurisdiction" elsewhere throughout Title 28. See, e.g., 28 U.S.C. § 1390(a) (providing that "the term 'venue' refers to the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general"); id. § 1447(c) (setting forth procedural requirements to file a "motion to remand [a removed] case on the basis of any defect other than lack of subject matter jurisdiction"); id. § 1447(e) (laying out procedural options when "after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction"); see also id. § 1738B(c)(1)(A)-(B) (referring separately to subject matter and personal jurisdiction in the context of child support orders).[15] Clearly then, Congress knows

_____

is in no way inconsistent with Congress's expressed intent to require a presumption in favor of transfer once a court has found (through the usual means) that it lacks personal jurisdiction.

[15] Moody's points to these two provisions in § 1738B and asks why it is that, if the unqualified use of "jurisdiction" refers to both kinds, Congress went to the trouble of differentiating between "subject matter jurisdiction" and "personal jurisdiction" since referring to "jurisdiction" alone would have sufficed? The answer is that Congress's desire, expressed in certain other statutes, to explicitly specify that both personal and subject matter jurisdiction are included when it uses the word "jurisdiction" does not mean that it must do so on each and every occasion in

- 26 -

how to, through the use of plain language, limit the word "jurisdiction" to subject matter or personal jurisdiction when it wants to. That it chose not to do so in § 1631 further supports reading the term broadly to encompass both. Simply put, we see no ambiguity.

But, in a further attempt to convince us its interpretation of § 1631 is correct, Moody's refers to a statement in a well-respected treatise, Federal Practice and Procedure, that "the overall 'context of the [Improvement Act] supports [the] interpretation' that § 1631 'was intended to apply only to situations in which a court lacked subject matter jurisdiction.'" Appellees' Br. at 26 (quoting 15 Charles Alan Wright, et al., Federal Practice and Procedure § 3842 (4th ed. 2008) (alterations

_____

order to avoid drafting an ambiguous statute. Cf. Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S, 132 S. Ct. 1670, 1682 (2012) ("[T]he mere possibility of clearer phrasing cannot defeat the most natural reading of a statute . . . .").

Moody's could, of course, use this logic to argue that Congress's explicit indication in certain instances that it's only talking about subject matter jurisdiction does not mean that it has to be this specific everywhere in order to limit other statutes' applicability to subject matter jurisdiction. But we think Congress's specificity in the context of statutes which, by their nature, could not sensibly be read to refer to personal jurisdiction (even without placing "subject matter" before "jurisdiction"), see, e.g., 28 U.S.C. §§ 1390(a), 1447(c), (e), actually lends import to Congress's failure to include such a qualifier in a statute that, like § 1631, contains no such inherent textual or logical limitations. In other words, the lack of specificity in a statute that could logically refer to subject matter jurisdiction, personal jurisdiction, or both cuts in favor of attributing a broad meaning to the word "jurisdiction."

- 27 -

and emphases the Appellees')).  Moody's goes on to quote the treatise at length regarding the impetus behind Congress's enactment of the Improvement Act, of which § 1631 was a part:

> The Improvement Act created the Federal Circuit and attempted to mitigate litigants' confusion as to whether they were supposed to file in the "regular" federal courts or in one of the increasing array of specialized courts, such as the then-new Court of International Trade, Court of Federal Claims, or the Federal Circuit.  Additionally, the Improvement Act sought to help litigants who sought review of administrative action and who were unsure as to whether they were to file in a district court or an appellate court.  <u>All these congressional concerns are related to subject matter jurisdiction and have nothing to do with personal jurisdiction or venue</u>.

Id. at 26 n.17 (quoting Wright, supra, § 3842 (emphasis the Appellees')).  The authors chalk up the use of language embracing both personal and subject matter jurisdiction to "a case of clumsy drafting," and they divine from the legislative history "clear" signals that § 1631 "was intended to apply only to situations in which a court lacked subject matter jurisdiction."  Wright, supra, § 3842.  The treatise also justifies departing from the plain text by dubbing the statute "ambiguous."[16]

---

[16] In its reply brief, the Bank points out that even the treatise authors allow that "[t]he textual argument for extending Section 1631 to situations in which a court lacks personal jurisdiction is certainly strong" in light of Black's Law Dictionary's expansive definition of "want of jurisdiction." Appellant's Reply at 9 n.3 (quoting Wright, supra, § 3842).

- 28 -

With all due respect to the distinguished authors, we do not agree with their analysis on this point. First, we've already said that we see no ambiguity in the statutory language, and Black's provides a clear definition indicating that "want of jurisdiction" includes both personal and subject matter jurisdiction. The treatise -- which even recognizes Black's broad definition -- does not explain how it is that a phrase defined in this way is ambiguous, and none of our prior cases give any indication that either "jurisdiction" or "want of jurisdiction" is ambiguous. Moreover, we believe the absence of limiting language in § 1631 simply demonstrates that Congress intended to enact a statute with a broad reach: "the fact that a[n] [unambiguous] statute can be 'applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.'" Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 212 (1998) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 499 (1985)). Accordingly, Moody's reliance on Federal Practice and Procedure does not cause us to change our view of § 1631's unambiguous language.

### ii. Caselaw and Other Considerations

Sticking with the statutory language discussion a moment longer, we note the parties have not cited, nor have we located, any case in which we have restricted the definition of either "jurisdiction" or "want of jurisdiction" to refer to subject matter

jurisdiction only.  In fact, we have on occasion said there is a "want of jurisdiction" in cases where the court lacked personal jurisdiction over a party.  See United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085-91, 1099 (1st Cir. 1992) (discussing the lack of personal jurisdiction over a defendant, and later referring to "the trial court's want of jurisdiction"); see also Evans Cabinet Corp. v. Kitchen Int'l, Inc., 593 F.3d 135, 147 n.19 (1st Cir. 2010) (using the term "want of jurisdiction" interchangeably with "personal jurisdiction" in its discussion of the Supreme Court's Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), opinion); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 965 (1st Cir. 1997) (reviewing the district court's dismissal for lack of personal jurisdiction under the rubric of a "[w]ant of [j]urisdiction").  Thus, our past references to a "want of jurisdiction" are unquestionably broad enough to include both personal and subject matter jurisdiction. Cf. United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661-62 (1st Cir. 1990) (finding that, where "there is no claim of lack of personal jurisdiction, and [because] it is clear that the [lower] court had subject matter jurisdiction," there was no want of jurisdiction).  Therefore, our caselaw is not inconsistent with our reading of § 1631's plain language as permitting transfer where a court lacks either personal or subject matter jurisdiction.

Moreover, our interpretation of § 1631's scope is consistent with that of the other circuits that have considered the issue.[17]

In Roman v. Ashcroft, 340 F.3d 314 (6th Cir. 2003), the Sixth Circuit, noting that § 1631 "does not refer to any specific type of jurisdiction," looked at Congress's intent in enacting the statute and "conclude[d] that the statute applies to federal courts identifying any jurisdictional defect, regardless of whether it involves personal or subject matter jurisdiction."  340 F.3d at 328.  It then found that § 1631 applied to permit transfer in a case where the district court lacked personal jurisdiction over a party.  Id.

The Tenth Circuit came out the same way in Ross v. Colorado Outward Bound School, Inc., 822 F.2d 1524 (10th Cir. 1987).  The court found that, "[i]n harmony with the intent of Congress, this section has been broadly construed since its enactment."  Ross, 822 F.2d at 1527 (collecting cases).  Thus, it held that "[t]he correct course" for a federal district court to follow when it lacks personal jurisdiction is to consider

_____

[17] In citing out-of-circuit authority, Moody's points to a string of district court cases, including a couple from the district of Massachusetts.  The reasoning in these cases does not dissuade us from our analysis of § 1631's plain language, purposes, and legislative history.  We also note, by the way, that no other federal appellate court has explicitly found the statutory text to be ambiguous, and the parties have not directed us to any district court decision to that effect either.

- 31 -

transferring the action pursuant to § 1631.  Id.  And the Third Circuit reached a similar result in Island Insteel Systems, Inc. v. Waters, 296 F.3d 200 (3d Cir. 2002), stating (albeit without analysis)[18] that a district court "ha[s] authority" under § 1631 to transfer an action over which "it lack[s] in personam jurisdiction."  296 F.3d at 218 n.9.

Two other circuits have implied, without explicitly holding, that § 1631 permits transfer when there is a want of personal jurisdiction.  See Johnson v. Woodcock, 444 F.3d 953, 954 n.2 (8th Cir. 2006) ("[W]e affirm the district court's dismissal [for lack of personal jurisdiction] even though the court was empowered by 28 U.S.C. § 1631 to transfer the action to another court to cure the lack of jurisdiction."); Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 761-62 (9th Cir. 1990) (per curiam) (concluding that the district court lacked personal jurisdiction over the defendants and remanding for the court to consider whether transfer under § 1631 would be "in the interest of justice").  Cf. Dornbusch v. Comm'r, 860 F.2d 611, 612 (5th Cir. 1988) (per curiam) (noting, in a case involving improper venue

---

[18] Moody's argues that we should not find these out-of-circuit cases to have any persuasive value because those courts did not engage in a sufficiently detailed or rigorous analysis.  But when a court is of the mind that a particular issue is "easy," it is not at all surprising that its analysis may be brief, and so mere brevity should not be taken as indicating a lack of attention paid to a particular issue.

rather than a lack of personal jurisdiction, that § 1631's legislative history is "fully consistent with . . . a broad, nontechnical reading of" that statute).

We also note that, though the Sixth Circuit in <u>Roman</u> identified a "circuit[] . . . split" with some circuits finding § 1631 permits transfer only where subject matter jurisdiction is lacking, <u>Roman</u>, 340 F.3d at 328 (citing cases), we hesitate to condone that characterization. Our canvassing of the circuits indicates that, to date, no circuit has explicitly found or held that the statute is so limited. The Second Circuit has come the closest, but it addressed the issue in what can only be characterized as dicta and even there did not take a definitive stance. <u>See</u> <u>Songbyrd, Inc.</u> v. <u>Estate of Grossman</u>, 206 F.3d 172, 179 n.9 (2d Cir. 2000) (discussing how a court that lacks personal jurisdiction may appropriately transfer a case pursuant to 28 U.S.C. § 1404 or § 1406, and noting that "the legislative history of section 1631 provides some reason to believe that this section authorizes transfers only to cure lack of subject matter jurisdiction").

The other circuits that have touched upon § 1631 have not had occasion to decide whether it permits transfer when personal jurisdiction is lacking. <u>See</u> <u>In re Carefirst of Md., Inc.</u>, 305 F.3d 253, 257 n.2 (4th Cir. 2002) (explicitly stating the court "need not decide whether section 1631 extends to cases

- 33 -

where only personal jurisdiction is lacking"); <u>Carpenter-Lenski</u> v. <u>Ramsey</u>, No. 99-3367, 2000 WL 287651, at *2 (7th Cir. Mar. 14, 2000) (unpublished) (acknowledging uncertainty over the scope of § 1631 but saying that "[w]e have not addressed this issue, and need not reach it in this case"); <u>Bond</u> v. <u>Ivy Tech State Coll.</u>, 167 F. App'x 103, 106-07 (11th Cir. 2006) (per curiam) (unpublished) (affirming district court's dismissal based on lack of personal jurisdiction and upholding its finding that the interest of justice did not require transfer under § 1631 without reaching the question of whether § 1631 authorizes transfer where personal jurisdiction is lacking); <u>Hill</u> v. <u>U.S. Air Force</u>, 795 F.2d 1067, 1070-71 (D.C. Cir. 1986) (per curiam) (affirming dismissal for lack of personal jurisdiction and concluding that the district court did not abuse its discretion in failing to sua sponte transfer "an individual claim" under § 1631 where neither party requested transfer and where a related suit was already pending in a district where personal jurisdiction could be obtained over the defendant).

So, at the end of the day, we see that our interpretation of § 1631 is in line with those few courts of appeals to have considered the statute's scope and, as such, is consistent with the weight of authority. Moreover, a broad construction is consistent with § 1631's purpose and goals, which we discussed in <u>Britell</u>. Though <u>Britell</u> did not involve the particular jurisdictional issue we confront today (that panel was called upon

to analyze when a transfer would be "in the interest of justice"), its discussion of the animating policy considerations behind the statue's enactment is illuminating.

After examining much of the same legislative history that the parties here brought to our attention, the Britell panel concluded that Congress passed § 1631 to (1) make sure that "a litigant [does not] find himself without a remedy because of a lawyer's error or a technicality of procedure [that results from] uncertainty in some statutes regarding which court has review authority," and (2) eliminate the need to engage in the "wasteful and costly" practice of filing in multiple jurisdictions in case one court ended up not having jurisdiction. 318 F.3d at 74 (alterations in original) (quoting S. Rep. No. 97-275, at 11 (1982), reprinted in 1982 U.S.C.C.A.N. 11, 21). Accordingly, the statute "protects litigants against both statutory imprecision and lawyers' errors" and "offers a practical alternative" -- i.e., transfer when jurisdiction is wanting -- "to the prophylactic, but inordinately wasteful, precaution of double filing." Id. And, we observed, the statute "furthers the salutary policy favoring the resolution of cases on the merits." Id. (citing cases). These considerations, we said, lead to "[t]he conclusion that transfer, rather than dismissal, is the option of choice . . . ." Id.

Even though the jurisdictional concerns at issue here differ from the issues of concern to the Britell court, we think

the policy considerations <u>Britell</u> identified are nonetheless applicable to this appeal. Indeed, we have previously noted that "we [were] inclined to read § 1631 as allowing for transfers where a federal court lacks any type of jurisdiction (including personal jurisdiction)." <u>Cimon</u> v. <u>Gaffney</u>, 401 F.3d 1, 7 n.21 (1st Cir. 2005). Thus, we think interpreting § 1631 broadly to permit transfer when there's a lack of either personal or subject matter jurisdiction serves to advance the legislative purposes we identified in <u>Britell</u>.[19]

**WHERE DOES THE CASE GO NEXT?**

Our conclusion that § 1631 permits transfer where personal jurisdiction is lacking does not mean the Bank automatically gets its requested transfer. Still to be determined is whether transfer is "in the interest of justice," a question the district judge did not reach.[20]

We, however, discussed what is meant by "in the interest of justice" in <u>Britell</u>. We determined that § 1631's plain text

---

[19] There is one loose end to tie up. Because we conclude that § 1631 is not ambiguous, we consult legislative history in accordance with our obligation to ensure that applying it as written will not lead to an "absurd result[]." <u>Rudler</u>, 576 F.3d at 44-45. Recalling the parties' extensive discussion of this topic, we conclude it is not absurd to interpret § 1631 as permitting transfer in a case where personal jurisdiction is lacking.

[20] Another requirement of the statute, that the proposed transferee court be one "in which the action or appeal could have

and legislative history establish a rebuttable presumption in favor of transfer, Britell, 318 F.3d at 73, and "[o]nly if an inquiring court determines that a transfer is not in the interest of justice is the presumption rebutted," id. at 74.  We listed specific factors cutting in favor of (and others against) transfer, id. at 74-75, and we indicated that transfer may be warranted where "an action or appeal has obvious merit and the filing period has expired" in the putative transferee court's district, id. at 75.

Because the district court did not consider the "interest of justice" in the first instance, we think remand is warranted.  True, we made the "interest of justice" call ourselves in Britell.  See id. at 75-76.  But the question in Britell was whether an appeal that had admittedly been filed in the wrong appellate court (the First Circuit) should be transferred to a different appellate court that would have had jurisdiction (the Court of Appeals for the Federal Circuit).  Id. at 71.  There was no question as to the propriety of the district court's jurisdiction.  Section 1631 thus had nothing to do with the case until the appeal was docketed here, and so we handled the inquiry ourselves as the potential transferor court.

Here, our concern is whether, in the interest of justice, the district court should transfer the Bank's claims against

been brought at the time it was filed or noticed," 28 U.S.C. § 1631, is not at issue in this appeal.

- 37 -

Moody's to the Southern District of New York.  It is, therefore, appropriate for us to remand to the district court for it to answer this question.[21]

## DISPOSITION

For the reasons discussed above, the district court's order dismissing the Bank's claims against Moody's is **vacated** and this matter **remanded** for further proceedings consistent with this opinion.  Costs to the Bank.

---

[21] We are mindful of the Bank's resort to 28 U.S.C. § 1406(a) as an alternative vehicle for transfer.  Given that § 1631 carries a presumption in favor of transfer (which might not be the case with other statutes), we need not address § 1406(a) today.